[Crim. No. 10067. In Bank. March 16, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES EDWARD STOUT et al., Defendants and Appellants.

Edward L. Cragen, Carl Shapiro and Thomas Salcicca for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, Edward P. O'Brien, Michael R. Marron and Derald E. Granberg, Deputy Attorneys General, for Plaintiff and Respondent.

188

SULLIVAN, J.—Defendants were charged in an information in six separate counts with possession of marijuana (Health & Saf. Code, § 11530), transportation of marijuana (Health & Saf. Code, § 11531), possession of forged checks (Pen. Code, § 475), receiving stolen property (Pen. Code, § 496), alteration of serial numbers on firearm (Pen. Code, § 12090) and conspiracy to possess marijuana and to possess forged checks (Pen. Code, § 182). As to each count other than the alteration of the firearm (count five) they were also charged with having been armed with a deadly weapon at the time of the commission of the offense. A jury found defendants guilty as charged on all six counts. The court sentenced defendant Stout to state prison for the term provided by law but suspended imposition of sentence upon defendant Culp and granted her probation. Defendants appeal from the judgments.[1]

On January 6, 1964 Mrs. McMeen saw defendant Stout carrying a blue overnight bag and running towards a church under construction in San Jose. He hid the bag behind a dirt pile on the construction site. When Stout gave her no satisfactory explanation for his conduct, Mrs. McMeen telephoned the police. As she resumed watching defendant, who remained near the church, she saw an automobile driven by defendant Culp pull up and stop. Stout ran to the dirt pile, recovered the bag, threw it in the back of the automobile, and got in the front passenger seat. Just as he did so, San Jose Police Officer Ankenbauer drove up in a police car and Mrs. McMeen pointed out defendant Stout to him.

The officer approached the vehicle on Mrs. Culp's side and asked for her driver's license, which she handed to him. He then asked Stout what was in the blue bag. The latter replied that the bag belonged to defendant Culp who was "having trouble" with her husband and that he, Stout, was "just helping her out." The officer then asked: "Well, you wouldn't mind then if I take a look in the bag?" At that point he started walking to the rear of the car "to get on the passenger's side so I could take a look at the bag." When he got to the rear of the car, Mrs. Culp drove off in a burst of speed, leaving her driver's license in the officer's possession.

---

[1]Although defendant Culp appeals from the judgment of conviction, as we point out, no such judgment was entered against her. We therefore construe her appeal as an appeal from an order granting probation which is "deemed to be a final judgment." (Pen. Code, § 1237; see *People* v. *Donohoe* (1962) 200 Cal.App.2d 17, 32 [19 Cal.Rptr. 454].)

The officer gave chase in his patrol car and caught up with defendants when their automobile spun out of control and stalled as Mrs. Culp attempted a turn at high speed. When the officer walked up to the stalled vehicle, Stout alighted and ran off with the blue bag. The officer chased Stout, caught him and escorted him back to Mrs. Culp's vehicle. Stout thereupon threw the bag to Mrs. Culp, grabbed the officer by the arms, and held him until Mrs. Culp had driven away. Ankenbauer arrested Stout, placed him in the patrol car and returned to the construction site.

Defendant Culp drove a short distance to a service station where she was seen concealing the blue bag in some refuse at the rear of the premises. She then drove back to the vicinity of the church where she was placed under arrest. She refused to identify herself to a second officer who had arrived at the scene, but handed him her handbag upon his request. Identification was eventually made through the driver's license left in the hands of the first officer. Mrs. Culp refused to answer questions concerning the blue bag but the officers were able to locate it, nevertheless. It contained payroll checks which had been reported as stolen from a business firm, marijuana, narcotics paraphernalia and a loaded revolver with the serial number removed. When confronted with the bag Mrs. Culp admitted that it was hers, but stated that ''I don't know what is in it.''

At the police station the defendants were placed in separate interrogation rooms. Beyond identifying himself and his wallet, Stout refused to answer questions of a general nature asked of all arrestees, and demanded to see an attorney. Mrs. Culp also refused to answer general questions, other than to identify herself, until she saw an attorney. Testimony as to these events was presented before the jury but it did not include any accusations or incriminating questions directed to defendants at the police station.

A search of the vehicle driven by Mrs. Culp revealed registration certificates of other vehicles. One of the vehicles, registered in Stout's name, was located in the driveway of a home near the church which had been rented to Mrs. Culp and was occupied by her and Stout. The officers obtained a search warrant and thereafter searched the premises, finding other evidence incriminating both defendants in connection with the marijuana, forgery and stolen property violations.

At the trial Officer Ankenbauer testified on direct examination as to his arrival at the scene, his initial conversation with

defendants and their sudden flight as already summarized by us. He was then asked what he did when the car sped away. At this point defendants' counsel requested permission to examine the witness on *voir dire* "in regard to the search" upon the authority of *Gascon* v. *Superior Court* (1959) 169 Cal.App.2d 356 [337 P.2d 201]. In the ensuing examination outside the jury's presence, Ankenbauer, after repeating in essence the details already referred to, testified in substance that he wanted to look inside the bag and was in the course of going around to Stout's side of the car "to continue the conversation" when defendants drove away.[2] On subsequent *voir dire* examination by the prosecutor, the officer testified that he was going to the other side of the car to have a further conversation with Stout before doing anything and to ask for permission to look in the bag.[3] Defendants did not take the stand in their own behalf.

Defendants do not, and indeed could not successfully, question the sufficiency of the evidence to support their convictions. Initially they contend that the court erred in denying their motion to suppress the evidence consisting of the contents of the blue bag[4] on the ground that such evidence was the product of a threatened illegal search of their property and thus of an attempted violation of their constitutional rights. Defendants rely upon *Badillo* v. *Superior Court* (1956) 46 Cal.2d 269 [294 P.2d 23] and *Gascon* v. *Superior Court, supra,* 169 Cal.App.2d 356.

In *Badillo* narcotics agents, without a warrant and without reasonable cause to make an arrest, unlawfully broke into the

[2]The record is not entirely clear because of the officer's response to defense counsel's leading questions: "Q I see. I take it you wanted to look inside the bag and you left to go to look at the bag; is that right? A Yes. I had left and was going to go around the other side and continue the conversation. Q In other words, you said you'd like to look inside the bag and at that point you turned and walked around the back of the car with your intention being to open the door, take the bag out and look at it; is that correct? A Yes, talk to Mr. Stout. Q And at that point the defendants left; is that correct? A Yes."

[3]In response to the prosecutor's questions Ankenbauer testified as follows: "Q I see. Now, at that time when you walked around the car, you were going to what place? A Around to the passenger's side of the car to continue the conversation with Mr. Stout regarding the bag. Q I see. Were you going to talk to Mr. Stout further before you did anything respecting the bag? A Yes. Q And were you going to ask Mr. Stout any other questions respecting the bag? A Yes. Q Were you going to ask him if he would let you look in the bag? A That's right. Q Again? A Yes."

[4]While the contents were admitted in evidence, the blue bag itself was not.

defendant's home. The latter ran out the front door and in the course of his flight threw away a package of heroin which was thereupon recovered by one of the officers. In granting a writ of prohibition, we said: "It clearly appears, however, that defendant's flight was out the front door and attempted disposal of the evidence was the direct result of Officer Getchell's illegal entry, and accordingly, the evidence was obtained in violation of constitutional guarantees." (46 Cal.2d at p. 273.)

In *Gascon* officers accosted and questioned a person on a street. After receiving answers which could not have created a reasonable suspicion, the officers announced that they intended to conduct a search, whereupon the detained person fled. He was apprehended but not before he had thrown away a package containing a narcotic, the unlawful possession of which was charged against him. It was conceded that, prior to the flight, the officers lacked probable cause to arrest or search the accused. Holding that the case could not be distinguished in principle from *Badillo*, the court concluded that the accused "was fleeing from the attempted illegal invasion of his constitutional rights (U.S. Const., Fourteenth Amendment; Cal. Const., art. I, § 19), and . . . he attempted to dispose of the evidence which the officers would have obtained had they been able to complete the threatened unlawful act. . . . [T]he evidence, being the product of the illegal acts of the officers, was illegally obtained." (169 Cal.App.2d at p. 359.)

The facts in the instant case do not disclose an actual completed invasion of constitutional rights as in *Badillo*. The question confronting us here is whether there was a threat of such an invasion capable of execution and sufficient to cause defendants' flight and disposal of the bag so that we must conclude, as the court did in *Gascon,* that the evidence eventually obtained was the product of an attempted illegal act of the officer.

In *People* v. *Mickelson* (1963) 59 Cal.2d 448, 450-451 [30 Cal.Rptr. 18, 380 P.2d 658], we said that "we have consistently held that circumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the streets for questioning. . . . Should the investigation then reveal probable cause to make an arrest, the officer may arrest the suspect and conduct a reasonable incidental search." (See also *People* v. *One 1960 Cadillac Coupe* (1964) 62 Cal.2d 92, 95-96 [41 Cal.Rptr. 290, 396 P.2d 706]; *People* v. *Lopez* (1963) 60 Cal.2d 223, 241 [32 Cal.Rptr. 424,

384 P.2d 16].) Stout's suspicious conduct in the instant case fully justified the inquiries made by Officer Ankenbauer. However, unlike *Gascon* where the officers announced their intentions to search the defendant, Ankenbauer in the instant case merely voiced a request to look in the bag. There was no response from the suspects. At that point he started walking toward the passenger's side of the car. Conceivably his request could have been met with a refusal upon his reaching his destination. At no time did he inform defendants that he *was going* to search the bag and we cannot say as a matter of law that what was outwardly only a request, even when conjoined with his conduct, amounted to an announced intention to search.

Defendants argue that, when Ankenbauer started to walk around to the other side of the automobile, they were entitled to conclude that he was about to make an illegal search even though they had made neither a response to his question nor any effort to ascertain his intentions. All of the circumstances of the incident were presented to the trial court during the *voir dire* examination had upon application of defendants (see fn. 3, *ante*). ▮ Whether there was a threat of an illegal search capable of being carried out was a question of fact to be determined by the court in the light of all the circumstances. (Cf. *People* v. *Shelton* (1964) 60 Cal.2d 740, 746 [36 Cal.Rptr. 433, 388 P.2d 665]; *People* v. *Michael* (1955) 45 Cal.2d 751, 753 [290 P.2d 852].) ▮ This question was determined adversely to defendants and such determination finds substantial evidentiary support in the record before us. We conclude that the court below properly overruled defendants' motion to suppress the evidence.

Defendants attack the sufficiency of the affidavit in support of the issuance of the search warrant pursuant to which the officers searched their residence, contending "that it is based entirely upon hearsay and does not contain facts sufficient to show probable cause for search." The trial court entertained a similar attack on the sufficiency of the affidavit and rejected it.

▮ In determining the sufficiency of an affidavit for the issuance of a search warrant, the test of probable cause is approximately the same as that applicable to an arrest without a warrant, a commitment by a magistrate or an indictment by a grand jury (*Williams* v. *Justice Court* (1964) 230 Cal.App.2d 87, 94 [40 Cal.Rptr. 724]; *People* v. *Aday* (1964) 226 Cal.App.2d 520, 532-533 [38 Cal.Rptr. 199]) namely,

whether the facts contained in the affidavit are such as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain, a strong suspicion of the guilt of the accused. (*People* v. *Govea* (1965) 235 Cal.App.2d 285, 296 [45 Cal.Rptr. 253].) ▮ The warrant can be upset only if the affidavit fails as a matter of law to set forth sufficient competent evidence supportive of the magistrate's finding of probable cause since it is the function of the trier of fact, not the reviewing court, to appraise and weigh evidence when presented by affidavit as well as when presented by oral testimony. (*People* v. *Govea, supra*, at p. 297; *Dunn* v. *Municipal Court* (1963) 220 Cal.App.2d 858, 869 [34 Cal.Rptr. 251]; *People* v. *Prieto* (1961) 191 Cal.App.2d 62, 68 [12 Cal.Rptr. 577]; *Arata* v. *Superior Court* (1957) 153 Cal.App.2d 767, 772, fn. [315 P.2d 473].)

▮ The instant affidavit was prepared by one of the officers involved in investigations immediately following the arrests. It recites that defendants were arrested while in possession of marijuana and certain payroll checks; that information had been received through police sources that a large number of similar payroll checks and other materials had been stolen, and one hundred of such checks were still missing; that a relative of the defendant Culp had advised that defendants resided together at the place to be searched and that the officers hoped to discover, by a search, particularly described materials. The sufficiency of the affidavit is manifest. The further contention that it is based on hearsay is without merit. (*People* v. *Smith* (1958) 50 Cal.2d 149, 151 [323 P.2d 435].)

Defendants assert that prejudicial error resulted from various rulings on the admissibility of certain evidence.

First. Hearsay objections were made and overruled as to the response to a radio police call made by the testifying officer to other police units and as to responses to an inquiry whether officers other than the testifying officer had touched the contents of the blue bag after its recovery. It is questionable whether the testimony objected to constitutes hearsay, that is, extrajudicial statements offered to prove the truth of the facts asserted. (See *People* v. *Dalton* (1959) 172 Cal.App. 2d 15 [341 P.2d 793]; Witkin, Cal. Evidence (2d ed. 1966) §§ 205, 215.) In any event, defendants could not have been prejudiced in view of the whole of the record.

▮ Second. It is argued that because the prosecutor was not required by the court to lay a proper foundation, the

court erred in admitting evidence of a payroll check discovered between the seat cushions of a patrol car in the area occupied by Stout. However, a sufficient foundation was laid to satisfy the court of the relevancy and materiality of the offer and the court correctly ruled that such matters as the time lapse between Stout's occupancy and the discovery of the check, and access to the vehicle by others, went to the weight rather than the admissibility of the evidence and could be explored on cross-examination.

Third. Objection is also made to testimony by an officer concerning the manner of assembling an eyedropper, gasket and hypodermic needle found in a plastic case in the blue bag. These items were not introduced as evidence and petitioners contend that the testimony relative to them was thus irrelevant, inflammatory and prejudicial. None of the crimes charged concerned, in any manner, the narcotic paraphernalia and those narcotic violations of which petitioners were convicted were established overwhelmingly and independently of the objected to testimony. Moreover the trial court, in unequivocal language, advised the jurors that the paraphernalia was not in evidence and that all testimony relative thereto should be disregarded. Although error may have occurred in the admission of the officer's testimony irrelevant to any issue in the case, it could not have constituted a miscarriage of justice in the prevailing circumstances. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

We now turn to the contention that the admission in evidence of certain extrajudicial statements constitutes reversible error under the rules announced in *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 SCt. 1758] and *People* v. *Dorado* (1964) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. Since the cause was tried long before June 13, 1966, the date of the decision in *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602], the instant problem is governed by *Escobedo* and *Dorado* and not by *Miranda*. (*People* v. *Rollins* (1967) 65 Cal.2d 681, 691-692 [56 Cal.Rptr. 293, 423 P.2d 221].) In their briefs defendants set forth a congeries of statements, purportedly incriminating, some made by Mrs. Culp and others by Stout. At oral argument, however, defendants' counsel made it clear to us that no error is claimed in respect to the admission of any statement made by Stout and that the only error asserted on behalf of Mrs. Culp pertains to her statement in which she

admitted ownership of the blue bag. Accordingly, we confine our discussion to this point.

At the time she made the statement Mrs. Culp was sitting in a patrol car near the church. As we have recounted above, she had already disposed of the bag at the service station and had driven back to the scene of the initial incident. At this point a police officer, unaware of the fact that other officers were in possession of Mrs. Culp's driver's licence and had already recovered and examined the bag, sought to establish her identity and the ownership of the bag.[5] At the same time Stout was in another patrol car shouting instructions to Mrs. Culp to the general effect she should not say anything and that they would get an attorney. He also, at this time, advised an officer that he could not "make this any easier" by co-operating in the investigation. As previously stated, at the police station both defendants refused to answer questions other than to identify themselves.

 *Dorado,* in applying the principles of *Escobedo,* prohibits the introduction of extrajudicial statements made at a time when (1) the investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements, and (4) the authorities had not effectively informed the suspect of his right to counsel and of his absolute right to remain silent, and these rights had not been waived. (*People* v. *Dorado, supra,* 62 Cal.2d 338, 353-354.) In *Dorado* the extrajudicial statement was a full confession of the crime charged, whereas in the instant case the Culp statement does not constitute a confession to any of the crimes charged in the information. The state is nevertheless required to meet the *Dorado* standard for admissibility of the statement (see *People* v. *Hillery* (1965) 62 Cal.2d 692, 712 [44 Cal.Rptr. 30, 401 P.2d 382]), but the self-incrimination deemed to result from an improper admission does not necessarily require that we reverse as in the case of an improperly admitted confession. (See *People* v. *Bostick* (1965) 62 Cal.2d 820, 834 [44 Cal.Rptr. 649, 402 P.2d

[5]The officer testified that when another officer drove up with the blue bag, "He held it out. The car pulled up fairly close to our vehicle [wherein defendant Culp was sitting] and he held it up and asked if this was her case. And she said, no. And then I said to her that 'If it is your case it will have your fingerprints on it. Therefore, it won't do you any good to tell any fabrications or story.' And she said 'I take good prints. My prints are all over it so it is mine, but I don't know what is in it.' "

529]; *People* v. *Bilderbach* (1965) 62 Cal.2d 757, 761 [44 Cal.Rptr. 313, 401 P.2d 921].) Rather we must determine whether the People have proved ''beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'' (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824]; *Fahy* v. *Connecticut* (1963) 375 U.S. 85, 86-87 [11 L.Ed.2d 177, 84 S.Ct. 229].)

■ At the time of Mrs. Culp's statement she was in custody and had not been advised of her right to counsel and her right to remain silent. However, she had been taken into custody by Officer Ankenbauer on charges of speeding, reckless driving and resisting arrest, at a time when the blue bag had not been recovered or its contents known. Thereafter Officer Rennick arrived at the scene of the arrest and was advised of the situation as it was then known. Mrs. Culp was placed in his custody and he sought to obtain routine information in preparation to impounding her automobile. The car lacked visible registration and the officer was unable to find evidence of registration on the steering column, the sun visors or the glove compartment, all of which he examined. Mrs. Culp, still in the automobile at the time, refused to identify herself but, upon request, handed her purse to Rennick. While the latter was examining its contents, Ankenbauer approached and handed Rennick Mrs. Culp's driver's license, from which he was able to identify her. She was then placed in Rennick's patrol car and the officer completed his preparations for impounding, and sealed the automobile.

In the meanwhile Officer Ankenbauer, with Stout still in his patrol car, left the scene accompanied by Sergeant Lee in another patrol car, to search for the blue bag. During this period Rennick had inquired concerning the blue bag, the significance of which was then undetermined, and when Sergeant Lee drove up with it Mrs. Culp conceded it was hers when Rennick, still unaware of its significance, pointed out that her fingerprints could be detected.

As noted, a necessary requirement for exclusion of an extrajudicial statement in the absence of proper warnings is that the authorities had carried out a process of interrogation which lent itself to eliciting incriminating statements. The situation which confronted Rennick in the instant case required that he obtain information in connection with the impounding of a vehicle involved in traffic violations and resisting arrest and, perhaps, that he investigate suspicious conduct involving the blue bag in connection with other possible, unknown violations. The on-the-spot investigation which he con-

ducted and the few questions which he asked did not go be-
yond the scope of those proper police objectives. The questions
which led to Mrs. Culp's statement were of the nature which
called for the identification of and relationships between the
suspects and the personal property involved, and an oppor-
tunity to explain away the strange conduct in connection with
the blue bag. (See *United States* v. *Konigsberg* (1964) 336
F.2d 844; *People* v. *Fork* (1965) 233 Cal.App.2d 725 [43
Cal.Rptr. 804]; cf. *People* v. *Garavito* (1967) 65 Cal.2d 761
[56 Cal.Rptr. 289, 423 P.2d 217].) In view of the "total sit-
tion" which enveloped the questioning, including "such
factors as the length of the interrogation, the place and time
of the interrogation, the nature of the questions, the conduct
of the police and all other relevant circumstances" (*People* v.
*Stewart* (1965) 62 Cal.2d 571, 579 [43 Cal.Rptr. 201, 400 P.2d
97]), we are persuaded to the conclusion that the police were
not carrying out a process of interrogations that lent itself to
eliciting incriminating statements. Mrs. Culp's statement that
the bag was hers was not admitted in evidence in violation of
the exclusionary rule.

As additional grounds for the inadmissibility of the
Culp statement claimed to be proscribed under *Escobedo-
Dorado,* defendants contend that they were denied the right
to make telephone calls to their attorneys at the time they
were booked. (Cf. *In re Newbern* (1961) 55 Cal.2d 500, 507
[11 Cal.Rptr. 547, 360 P.2d 43].) Defendant Culp testified on
*voir dire* that in response to her first request to call an attor-
ney she was advised that she could do so only after she was
booked; that after being booked she was not permitted to
make any call until two days later, although she made several
requests for permission to call during that period. Stout testi-
fied, also on *voir dire,* that he made numerous requests for
permission to make a call but was not permitted to do so until
some seven hours after he was brought into the police station.
Section 851.5 of the Penal Code provides in subdivision (a) :
"Any person arrested has, immediately after he is booked,
and except where physically impossible, no later than three
hours after his arrest, the right to make, . . . at least two
telephone calls from the police station or other place at which
he is booked, one completed to the person called, who may be
his attorney, employer, or a relative, the other completed to a
bail bondsman."

The testimony of police officers is in sharp conflict with that
of defendants. The deputy sheriff in charge of booking on the

day of the arrests testified that the usual procedure was to book arrestees, then send them to the telephone, although an immediate call would be permitted if a request was made before the completion of the booking. He stated that he had no recollection that either defendant requested permission to make a call after he commenced to book defendant Culp at 3:15 p.m. or defendant Stout at 3:55 p.m. on the day of the arrests. Another officer testified that official records disclosed that defendant Culp made a telephone call at 4:40 p.m. to the attorney who represented her at trial, and that at 5 p.m. Stout made a call to the same attorney.

Even if the matters asserted by defendants could be deemed to constitute a denial of counsel it does not follow that it would bear upon the admissibility of any of the extrajudicial statements (see *People* v. *Sigal* (1963) 221 Cal.App.2d 684 [34 Cal.Rptr. 767]), as the only statements of any substance were made prior to the claimed denial and, accordingly, could not have flowed therefrom. Moreover the record clearly demstrates that the question of whether defendants were permitted to make calls to their attorneys was presented to the trial court, outside the presence of the jury, and the court ruled against defendants. We cannot say that the determination lacks substantial evidentiary support.

 Defendants next complain that the prosecutor committed prejudicial misconduct by commenting on defendants' failure to take the stand to explain their conduct. (See *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229].) Such comments as were made by the prosecutor occurred during his closing argument, and only after defense counsel had advised the jurors relative to inferences which might be drawn upon an assertion of the constitutional right against self-incrimination. In countering defense counsel's arguments the prosecutor stated that he did not agree that because of defendants' failure to take the stand the state's case was necessarily one dependent upon circumstantial evidence; that by failing to testify defendants were subject to a permissible inference that they came unlawfully into possession of the gun found in the blue bag and thereafter removed the identification marks therefrom, and that certain defenses asserted by defense counsel could be deemed as his claims only, because defendants failed to testify in support of them.[6]

[6]The following are the major portions of the claimed improper comments: ''Counsel has his own explanation for that failure to take the stand, and it is one that I think I can't buy personally. He infers that

As stated, defendants do not attack the sufficiency of the evidence as to any of the counts, and as to all counts other than the alteration of the serial number of a firearm (count five) there is overwhelming evidence of the defendants' guilt. The only evidence as to count five is that the gun was stolen approximately two months prior to defendants' arrests; that the serial number had been intact at the time the gun was stolen and, of course, that the gun was found in defendants' possession with the serial number removed. Thus the trier of fact, in convicting defendants as to count five, was required to draw an inference that defendants had altered the serial number. It is manifest that their failure to take the stand to explain away the circumstances of their possession of the altered gun was a material factor in reaching the verdict as to that count, and it is as equally apparent that the jurors were substantially aided in reaching their verdict by the prosecutor's remarks on this essential element of his case. As the prosecutor's remarks were directed to the possession as well as the alteration of the gun, and as the gun constituted a portion of the stolen property which defendants were charged in count four with having received, the prosecutor's remarks must be deemed to have influenced the jurors in a substantial manner in reaching their verdict on that count also.

The prosecutor's remarks cannot be justified on the ground that they were invited by the prior argument of defense counsel that he had advised against testifying because defendants would then have the advantage of only a circumstantial case against them. The prosecutor not only met this argument by urging that the failure to testify did not make the case a

---

because his client didn't take the stand, this is a circumstantial case. That if they had taken the stand, it ultimately then becomes not a circumstantial case. I neither can concur that this is principally a circumstantial evidence case, nor can I concur that his client taking the stand would change that situation in the least. . . .''

''Now, there is a presumption that if he has it [the gun with the serial numbers removed] in his possession, that he was the one who did that removal. This is a presumption that if he took the stand, he could say, 'I didn't do that. I bought it that way,' or 'I didn't realize that was on there but I didn't do it.' He did nothing. And you will find that when he does nothing, then you may, if you choose—but you don't have to—draw the inference as against him in this case because he didn't testify. . . .''

''If you want to say, 'I didn't know it was happening, I was unconscious of what was happening, it happened through misfortune, it happened through accident, it happened through a mistake on my part,' all you have to do is take the stand and say so. . . . Who says so? [Defense counsel] says so. So [the claim] is not [made by] defendants but [by defense counsel].''

circumstantial one and that the defense was one asserted by defense counsel rather than defendants, but went beyond into the area of the damaging inference concerning the unexplained possession of the altered gun. This constituted misconduct under *Griffin* v. *California, supra,* 380 U.S. 609.

In view of the foregoing, we cannot say ''that the State has demonstrated, beyond a reasonable doubt, that the prosecutor's comments . . . did not contribute to [defendants'] convictions'' (*Chapman* v. *California, supra,* 386 U.S. 18, 26) of violations of Penal Code sections 496 and 12090 as charged in counts four and five, respectively, of the information. As to the remaining counts, however, we are satisfied that the People have proved beyond a reasonable doubt that the misconduct complained of did not contribute to the verdicts obtained. (*Chapman* v. *California, supra,* 386 U.S. 18, 24.)[7]

■ A final contention that a two-hour limitation on final argument denied defendants a fair trial is not meritorious. The court did not interrupt or terminate counsels' arguments, although it appears they went beyond the two-hour limit. The prosecutor was also limited to two hours in his arguments and, at the hearing on a motion for a new trial, his statement that he had actually taken two hours and five minutes as against two hours and twenty-one minutes by defense counsel went unchallenged. The record fails to disclose that defense counsel objected to the imposition of the limitation except on motion for a new trial and on this appeal.

Unlike the present case, in those instances where the imposition of a limitation has been held to be reversible error, counsel properly interjected an objection to the order limiting time and the evidence was largely circumstantial or in substantial conflict. (*People* v. *Green* (1893) 99 Cal. 564, 565, 569 [34 P. 231]; *People* v. *Keenan* (1859) 13 Cal. 581, 582-583, 583-584; *People* v. *Fernandez* (1906) 4 Cal.App. 314, 321, 323-324 [87 P. 1112].) In the absence of a showing of prejudice, no reason appears why we should disturb the exercise of discretion by the trial court in imposing a reasonable limitation on the argument of counsel. (See *People* v. *Simon* (1951) 107 Cal.App.2d 105, 123 [236 P.2d 855].)

---

[7]Defendants also claim that the court erred in giving the usual instruction as to defendants' failure to testify condemned in *Griffin* v. *California, supra,* 380 U.S. 609 which was decided after the trial of the instant case. However, the record before us fails to disclose that such instruction was given.

The judgment and order are reversed as to counts four and five; in all other respects the judgment and order are affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

Appellants' petition for a rehearing was denied May 4, 1967, and the opinion and judgment were modified to read as printed above.