[Civ. No. 9207.  Fourth Dist., Div. Two.  Oct. 31, 1969.]

DONNA LARUE SPURLOCK, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

COUNSEL

Tomlinson & Taves and John T. Tomlinson, Jr., for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, Lynn Henry Johnson and David W. Halpin, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**TAMURA, J.**—Petitioner was charged with violations of Vehicle Code, sections 20002 (failure of driver of vehicle involved in accident to stop to identify himself and ascertain the owner of the damaged property), and 23102 (misdemeanor drunk driving), as the result of incidents occurring on the night of August 13, 1967. Petitioner pleaded guilty to the section 20002 violation, and the charges relative to section 23102 were dismissed.

Subsequently, petitioner was notified that, pursuant to Vehicle Code, section 13353, subdivision (b), her privilege to operate a motor vehicle on the highways of the state was to be suspended for a period of six months. Petitioner requested an informal hearing (see Veh. Code, §§ 13353, subd. (c) and 14104), and the order of suspension was temporarily stayed.

A referee appointed by the Director of the Department of Motor Vehicles held a hearing at which petitioner was represented. The referee found the suspension order "proper and required;" the department again ordered the petitioner's license suspended for six months.

Petitioner sought a writ of mandate from the superior court and obtained a stay of the suspension pending hearing on the petition. After a hearing, the court upheld the department's findings, discharged the alternative writ, denied the petition for a peremptory writ of mandate, and entered judgment. Petitioner appeals from the judgment. The order suspending petitioner's driver's license has been stayed pending determination of the appeal.

At the hearing conducted by the department, testimony was given by two witnesses, the arresting officer, John W. Fletcher of the Chino Police Department, and the petitioner.

Officer Fletcher testified that while on patrol in the early morning hours of August 13, 1967, he received a radio report from one Officer Moreno notifying him of an accident which had recently occurred at the corner of

Riverside Drive and Central Avenue. The report stated that a white car had run into a light signal pole at that location and driven away without stopping. Fletcher proceeded toward the scene of the reported accident. As the officer reached the intersection of Walnut Street and Central Avenue (which is approximately three-quarters of a mile from the scene of the reported accident), he observed a white automobile turning from Walnut into Central. He noted that the front end of the car had been damaged. The car properly negotiated the turn and continued along Central Avenue. Officer Fletcher followed the car for approximately one-quarter of a mile; during this time he noted no erratic behavior. Then he turned on his light. At this point, the white car pulled from the slow, right-hand lane to the fast, left-hand lane. Its wheels ran onto the double line in the middle of the roadway. Next, it crossed back to the slow, right-hand lane and stopped at the curb, approximately 175 yards beyond the point of activation of the red light. Petitioner was the driver of the car.

After petitioner produced her driver's license, Officer Fletcher noted the odor of alcohol on her breath and requested her to perform a roadside sobriety test. Petitioner failed to satisfactorily perform such tests. She had to hold the fender of her car when standing with one leg lifted; she needed to use the vehicle "as a crutch" when asked to walk; and she staggered as she moved. She was placed under arrest. The record is unclear whether petitioner was arrested for drunken driving or the hit-and-run violation, or both. The police forms, filled out substantially after the arrest, indicate the arrest was made for both. She was advised of her constitutional rights and transported to the Chino city jail for booking. The "implied consent law" was explained to her enroute.

At the station, Officer Fletcher read the warning statement from Form DL-367.[1] Petitioner stated that she was not going to sign anything or do anything, and requested permission to contact her attorney. Although allowed access to the telephone, she called her husband instead. The Form DL-367 warning was again read to her and she again refused to take any tests. The first reading was approximately 15 minutes after arriving at the station and the second reading approximately 10 to 15 minutes after the first. The second reading was for the purpose of assuring petitioner's understanding of the two prior advisements.

Petitioner refused to answer any questions concerning her drinking or physical condition.

All three tests (blood, breath and urine) were available at the station,

---

[1]You are requested to submit to a chemical test to determine the alcoholic content of your blood. You have a choice of whether the test is to be of your blood, breath or urine. A refusal will result in the suspension of your driving privilege for a period of six (6) months.

but no doctor was called to administer any of the tests. The "balloon" test was immediately available.

Petitioner testified on her own behalf. She stated that she had difficulty standing on one leg because of a bad knee and that she had trouble walking because the surface was rocky and dirty and she was barefooted. She denied being advised that she had been arrested, denied any conversation between herself and the arresting officer concerning the implied consent statute, and denied that she was advised of her constitutional rights. Petitioner admitted that the DL-367 warning was read to her at the station.

On this appeal, petitioner makes four general allegations of error: (1) the Department of Motor Vehicles erred in failing to make a determination as to the lawfulness of petitioner's arrest; (2) as applied to petitioner, Vehicle Code, section 13353, constitutes an *ex post facto* law; (3) the department did not acquire jurisdiction of petitioner inasmuch as the hearing officer was not an attorney; and (4) petitioner was denied due process.

Vehicle Code, section 13353, subdivision (a) reads: "Any person who drives a motor vehicle upon a highway shall be deemed to have given his consent to a chemical test of his blood, breath or urine for the purpose of determining the alchoholic content of his blood if lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of intoxicating liquor. The test shall be incident to a lawful arrest. . . ."

Penal Code, section 840, outlines permissible procedures for effecting an arrest: "If the offense charged is a felony, the arrest may be made on any day, and at any time of the day or night. If it is a misdemeanor, the arrest cannot be made at night, unless upon direction of the magistrate, indorsed upon the warrant, except when the offense is committed in the presence of the arresting officer."

It is not clear whether petitioner was arrested for drunken driving, or failure to stop at the scene of an accident, or both. In any event, she contends that since neither offense was committed in the presence of the arresting officer, that since both are misdemeanors and no warrant was issued, the arrest was improper under Penal Code, section 840, and that the arrest being invalid, the strictures of Vehicle Code, section 13353, did not become operative.

The plain language of Vehicle Code, section 13353, supports petitioner's contention that the implied consent law becomes effective only when a driver of a motor vehicle is "lawfully arrested." In order for the

arrest in this case to be proper, the offense must have been committed in the arresting officer's presence. As the incident with the light pole was not committed in his presence, we must inquire whether the officer had probable cause to arrest petitioner for drunken driving, the offense which was committed in his presence.

■ There was substantial evidence that at the time he placed her under arrest, Officer Fletcher did have probable cause to believe petitioner was driving under the influence of alcoholic beverages. He detected the odor of alcohol on petitioner's breath and found her unable to satisfactorily perform the roadside sobriety tests. Further, he had a report that a car described as similar to petitioner's had recently been involved in a hit-and-run accident, of a type from which one might suspect an intoxicated driver, close in proximity to the scene of the arrest from the standpoints of both time and place. Petitioner's car showed signs of damage. Considering the time of day, approximately 2:15-2:45 a.m., the officer could reasonably believe that petitioner's car was the one involved in the accident. The totality of these circumstances constituted probable cause to arrest. (*People* v. *Ingle,* 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577], cert. den. 364 U.S. 841 [5 L.Ed.2d 65, 81 S.Ct. 79]; *People* v. *Gibson,* 220 Cal.App. 2d 15 [33 Cal.Rptr. 775].)

However, it has been noted that the most persuasive of this information was gained after the stop had been made. Therefore, we must further inquire whether the officer had proper cause to stop the car.

■ In *People* v. *Moore,* 69 Cal.2d 674 [72 Cal.Rptr. 800, 446 P.2d 800], the court said: "Although circumstances short of probable cause to make an arrest may still justify an officer in stopping a pedestrian on the streets for questioning, a police officer may not detain and question a person when there are no circumstances which would indicate to a reasonable man in a like position that such a course was necessary to the proper discharge of the officer's duties. (*People* v. *One 1960 Cadillac Coupe, supra,* 62 Cal.2d 92, 95, 96 [41 Cal.Rptr. 290, 396 P.2d 706]; see *People* v. *Stout,* 66 Cal.2d 184, 191-192 . . .; *People* v. *Mickelson,* 59 Cal.2d 448, 450-451 . . .; c.f. *Terry* v. *Ohio,* 392 U.S. 1, 8 et seq. . . .)." The same standard is applicable to the police power to stop and question motorists. (*Jackson* v. *Superior Court,* 274 Cal.App.2d 656 [79 Cal.Rptr. 502]; *People* v. *Gibson, supra,* 220 Cal.App.2d 15.)

■ Applying these standards, Officer Fletcher had reasonable cause to stop petitioner. He had received information from an official report that a car of a certain description had been involved in a hit-and-run accident at a certain time at a given location. Shortly thereafter, and approximately three-

quarters of a mile from the scene of the reported accident, he saw a car with a damaged front end and matching the rather cursory description he had received on his radio. In view of the fact that these events occurred between 2:15 and 2:45 a.m., Officer Fletcher could entertain a reasonable suspicion that petitioner's car was the one involved in the accident. Since no identification had been obtained on the hit-and-run driver, the policeman could reasonably feel that stopping petitioner was necessary to the proper discharge of his duties. The stop was justified.

In summary, Officer Fletcher acted properly in stopping petitioner to investigate the hit-and-run report. From his subsequent observations and inquiries he gained sufficient information to justify an arrest on the drunk driving charge.

■ Admixed with the foregoing, petitioner complains that the department made no finding concerning the validity of the arrest. The hearing officer is not obligated to file written findings of fact made as the result of an informal hearing. (Veh. Code, § 14104.) While a valid arrest is necessary to the implementation of the license suspension under Vehicle Code, section 13353, by ordering suspension, the department impliedly found the arrest proper. The department's order was supported by substantial evidence.

■ Petitioner next argues that as applied to her, Vehicle Code, section 13353, constitutes an ex post facto law. Her contention in this regard takes the following form: while the ability to obtain a driver's license may be a privilege, once the license is obtained the driver acquires some form of property right in it; at the time petitioner acquired her property right, it was not subject to forefeiture under the implied consent law, i.e., Vehicle Code, section 13353, as the statute had not then been enacted; once having acquired this property interest, the qualification regarding implied consent may not be imposed upon it; although conceding that ex post facto rules relate to the imposition of criminal sanctions, petitioner contends that the implied consent law has its genesis in the criminal area.

This contention has already been considered and rejected by the court in *Serenko v. Bright,* 263 Cal.App.2d 682 [70 Cal.Rptr. 1]: "Appellant first contends that Vehicle Code section 13353 was applied to her retroactively in abridgement of her constitutional rights. Appellant misconceives the operation of the statute when she interprets it as limiting unconstitutionally her right to use the California driver's license which was issued to her prior to the enactment of Vehicle Code section 13353. This statute does not affect or apply to the issuance of a driver's license by the State of California nor does it unconstitutionally abridge the driving privilege thereunder. It is not the act of obtaining a driver's license which brings the statute into play, but instead the act of driving a motor vehicle upon a California highway is

the conduct from which the driver's implied consent to a chemical test flows . . . The statute constitutes a reasonable regulation of the exercise of the driving privilege within this jurisdiction."

■ Petitioner contends that the Department did not acquire jurisdiction of her because the hearing officer did not possess the qualifications required by Government Code, section 11502. That section provides: "All hearings of state agencies required to be conducted under this chapter shall be conducted by hearing officers on the staff of the Office of Administrative Procedure. The presiding officer of the Office of Administrative Procedure has power to appoint a staff of hearing officers for the office as provided in Section 11370.3 of the Government Code. Each hearing officer shall have been admitted to practice law in this State for at least five years immediately preceding his appointment and shall possess any additional qualifications established by the State Personnel Board for the particular class of position involved."

Although the record is silent on the matter, the Attorney General appears to concede that the referee who conducted the departmental hearing did not possess the qualifications required by Government Code, section 11502.

Assuming petitioner's factual allegations are correct, her legal contention has been resolved against her. In *Noll* v. *Department of Motor Vehicles,* 274 Cal.App.2d 281 [79 Cal.Rptr. 236], and *Serenko* v. *Bright, supra,* 263 Cal.App.2d 682, it was held that hearing officers proceeding under the provisions of the implied consent law need not meet the qualifications of Government Code, section 11502. No distinction is made between informal hearings (Veh. Code, § 14104) and formal hearings (Veh. Code, § 14107).

Finally, petitioner contends she was denied her constitutional right of due process. She asserts that the suspension of her license is improper inasmuch as there has not been a judicial determination that she was in fact driving under the influence of alcohol. Her position appears to be that it is unreasonable for her license to be suspended for no reason other than that she refused to take the blood alcohol content test, that it is necessary she be found drunk before her license can be suspended pursuant to any legitimate state interest.

■ Initially, it must be noted that Vehicle Code, section 13353, authorizes the suspension of an individual's driver's license for failure to submit to the sobriety tests without any finding that the individual is, in fact, intoxicated.

In *Walker* v. *Department of Motor Vehicles,* 274 Cal.App.2d 793 [79

Cal.Rptr. 433], the Court of Appeal held that the procedure required by section 13353 is consistent with due process. "The Legislature had a sufficient reason for requiring a chemical test, and for providing a simple administrative sanction to enforce that requirement. The combination of criminal punishment and administrative sanctions which are imposed upon a person convicted of drunk driving (see Veh. Code, §§ 23102, 13210 and 13352) serve a different purpose and, in a particular case, may be more or less onerous than the sanction imposed under section 13353."

We are in agreement with the conclusion reached by the court in the *Walker* case. ■ The interest which the Legislature is attempting to regulate by Vehicle Code, section 13353, is not one protected by specific guarantee of the United States Constitution; neither does it affect the integrity of the political process, nor does its impact fall most heavily upon a discrete and insular minority. (See *United States* v. *Carolene Products Co.,* 304 U.S. 144, fn. 4 [82 L.Ed. 1234, 58 S.Ct. 778].) Thus the standard to be applied in determining its conformity with the requirements of due process is that enunciated in *Williamson* v. *Lee Optical of Oklahoma,* 348 U.S. 483 [99 L.Ed. 563, 75 S.Ct. 461]: ". . . the law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it."

■ Applying this "minimum rationality" standard, it can be said that drunken drivers upon the state highways are an evil the Legislature might reasonably desire to regulate, that Vehicle Code, section 13353, is designed to help regulate the problem, and that the means used are reasonably related to the end sought to be achieved. Thus, it is not violative of federal or state due process.

Admixed with the above, petitioner contends that her right of due process is violated by Vehicle Code, section 13353, because the arresting officer's conclusory assertion that he believed petitioner to be intoxicated while driving is sufficient to result in the license suspension. We need not consider this argument in the instant case. At the hearing before the department, Officer Fletcher recited the evidentiary facts which led him to conclude that petitioner was intoxicated. These evidentiary facts are sufficient to support his conclusion.

Judgment affirmed.

Kerrigan, Acting P. J., and Hilliard, J. pro tem.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.