Filed 8/4/16  P. v. Scarff CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062827 |
| v. | (Super.Ct.No. INF1200638) |
| JUSTIN RYAN SCARFF, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Ronald L. Johnson, Judge.  (Retired judge of the San Diego Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed with directions.

I

INTRODUCTION[1]

Defendant Justin Ryan Scarff attacked an elderly man and his wife in their home. A jury convicted defendant of five offenses:  (1) attempted murder (§§ 664/187); (2)

---

[1] All statutory references are to the Penal Code unless stated otherwise.

1

home invasion robbery (§§ 211, 212.5, subd. (a)); (3) attempted first degree robbery (§§ 664/211, 212.5, subd. (a)); and (4) and (5) two counts of assault with a deadly weapon (§ 245, subd. (a)(1).) The jury found on three counts (1, 3, and 4) defendant personally inflicted great bodily injury on a person 70 years of age or older. (§§ 1192.7, subd. (c)(8), 12022.7, subd. (c).) The jury found that defendant did not act with premeditation and deliberation in committing attempted murder. The court found defendant had a prior strike conviction and sentenced him to prison for 33 years four months.

On appeal, defendant challenges the court's admission of testimony based on a suggestive photographic lineup. Defendant also contends the court allowed improper argument by the prosecutor and unfairly curtailed defendant's closing argument, as well as committing several sentencing errors. Based on our review, we affirm the judgment with a modification of defendant's sentence.

II

FACTS

On March 17, 2012, at 4:30 p.m., Leonard Kaplan, age 76, was walking his dog in a gated community in Palm Springs when he saw defendant, whom he did not know. Defendant followed Kaplan home to his garage and confronted him, demanding money. Kaplan said he had no money. Defendant first threatened Kaplan, then he seemed to be leaving before he announced, "I'm going to do it," and stabbed Kaplan with a knife in the face and neck. Kaplan tried to defend himself but, as they struggled, Kaplan fell to the floor and defendant kicked him in the face and chest.

2

Defendant stopped attacking Kaplan and entered the house where he confronted Kaplan's wife, Gail Holtzman, in the bedroom. Still holding the knife, defendant demanded money. Defendant grabbed Holtzman's shirt and dragged her into the hallway, where she slipped and fell. After defendant released her, she ran quickly to the alarm system panel but she could not remember the panic code. Defendant grabbed her again and she fell in the den. Defendant snatched her handbag and knitting bag and fled the house.

Holtzman went into the kitchen and found her husband covered in blood and holding the phone. He could not call 911 because blood obscured his vision. Holtzman called 911 and accompanied Kaplan to the hospital.

Kaplan and Holtzman's neighbors, David Brastauskas and his husband, saw defendant outside their house, heard their garage door rattling, and called 911. Another pair of neighbors were Robert Stroney and William Hass, who spotted defendant outside, "casing the joint." Then Stroney watched defendant change his clothes and place his discarded clothes in the trash barrel. Stroney observed defendant's tattoos and called 911. Hass went outside and chased defendant away.

The police arrived and found Holtzman's handbag and knitting bag in the recycle bin. The police apprehended defendant on a bus, wearing clothes and carrying a duffel bag, matching the description given by Stroney. Kaplan's DNA was detected on defendant's ear, his shoelaces, and on a dollar bill on his person.

Defendant denied attacking Kaplan or Holtzman. Instead, he provided an elaborate and detailed alibi in which he claimed he and his girlfriend had engaged in a

3

bloody fight on March 16. The next day he performed some tattooing from 1:00 p.m. until 3:40 p.m. and waited for his girlfriend to pick him up, finally deciding to take a bus at 5:00 p.m. Defendant was tying his shoelaces at the bus stop when a "Mexican" stranger, wearing a black Raiders jacket tripped on him and they began fighting. The stranger dropped some money on the ground and ran away. Defendant picked up the money.

When he was arrested, defendant told the police about being knocked down but he did not speak about the fight. He explained he was not carrying any tattoo equipment because his client had his own equipment. Defendant thought the blood on his ear was from the fight with his girlfriend.

Robert Mirkovic testified that defendant had done tattoo work for him on the afternoon of March 17, using Mirkovic's tattoo gun. They finished about 4:30 p.m. Defendant's girlfriend arrived but left after arguing with defendant. Mirkovic saw a person in a black Raiders jacket knock defendant over while he was tying his shoe. They scuffled briefly and defendant ran off to catch a bus.

Other relevant facts will be discussed in the body of the opinion.

III

RESTITUTION FINES

Defendant argues the court violated due process when it imposed a $10,000 restitution fine and a $10,000 parole revocation restitution fine as recommended in the probation report. He argues the fines were not explicitly discussed during his sentencing hearing. Therefore he was not accorded his constitutional right to a hearing. This

4

argument fails because defendant had notice of the proposed fines in the probation report and he did not object to the fines at the sentencing hearing. (*People v. Williams* (1997) 16 Cal.4th 153, 250; *People v. Scott* (1994) 9 Cal.4th 331; *People v. Blankenship* (1989) 213 Cal.App.3d 992, 997-998.) Additionally, such fines are mandatory or a sentence is invalid. (*People v. Hudson* (2003) 113 Cal.App.4th 924, 929.) The trial court has discretion in imposing the fines but no express findings or separate hearing was required. (§§ 1202.4, 1202.45; *People v. Romero* (1996) 43 Cal.App.4th 440, 448-449.)

IV

COUNT 3

Defendant next contends his sentence on count 3 for attempted robbery of Kaplan should have been stayed rather than imposed consecutively to his sentence on count 1 for attempted murder of Kaplan.

Section 654 precludes multiple punishments for "a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction." (*People v. Perez* (1979) 23 Cal.3d 545, 551.) However, where the trial court finds a defendant entertains multiple and independent criminal objectives, separate punishments are permitted for crimes which would otherwise constitute an indivisible course of conduct. (*Ibid.*) The reviewing court employs a deferential standard of review of the trial court's findings based on substantial evidence. (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312-1313.)

5

At the sentencing hearing, the trial court denied defendant's request to stay his sentence on count 3 and imposed the sentence consecutively.[2]  Substantial evidence supports the trial court's findings.  Although the attempted robbery and murder of Kaplan were close temporally, the facts demonstrate defendant had different criminal objectives. (*People v. Coleman* (1989) 48 Cal.3d 112, 162.)

When defendant followed Kaplan into the garage, he first demanded money but then defendant seemed to be leaving before he changed his mind and began stabbing Kaplan.  Defendant's murder attempt was a separate and independent act not necessary to effect the robbery.  (*People v. Coleman, supra,* 48 Cal.3d at pp. 162-163; *People v. Sandoval* (1994) 30 Cal.App.4th 1288, 1299-1300.)  As in *Sandoval*, defendant attempted to rob Kaplan who was uncooperative.  The attempted robbery was complete at this point. It was only after this that defendant apparently determined for his own purposes to punish Kaplan or "to assuage his own thwarted desires by seeking other and different gratification" by stabbing Kaplan with absolutely no provocation.  (*Ibid.*)

In these circumstances, the rule has been clearly set out:  "[A] separate act of violence against an unresisting victim or witness, whether gratuitous or to facilitate escape or to avoid prosecution, may be found not incidental to robbery for purposes of section 654."  (*People v. Nguyen* (1988) 204 Cal.App.3d 181, 193.)  The stabbing was a much more extreme act than was reasonably necessary to accomplish the original robbery

---

[2]  We agree with the parties that defendant's sentence of two years eight months on count 3 should be corrected to a sentence of 16 months.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185-187.)

offense. (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 272.) Each crime deserved a separate punishment and therefore section 654 does not apply.

V

PROSECUTORIAL ERROR

At the conclusion of his rebuttal argument, the prosecutor asked the jury to contemplate Kaplan "on that garage floor with blood pouring out of his face" and urged the jury to find defendant guilty of attempted murder. The court overruled defense counsel's objection based on prosecutorial misconduct. The prosecutor defended his comment, arguing he was entitled to argue the facts, which showed defendant was serious in his attempt to kill Kaplan. On appeal, defendant renews his objection to the prosecutor's comment, arguing it improperly appealed to the passions of the jurors and constituted reversible state law error and violated federal due process.

Defendant relies on cases holding it is improper to inflame the passions of the jury: "'"It is, of course, improper to make arguments to the jury that give it the impression that 'emotion may reign over reason,' and to present 'irrelevant information or inflammatory rhetoric that diverts the jury's attention from its proper role, or invites an irrational, purely subjective response.' [Citation.]"'" (*People v. Redd* (2010) 48 Cal.4th 691, 742.) 'It has long been settled that appeals to the sympathy or passions of the jury are inappropriate at the guilt phase of a criminal trial.' (*People v. Fields* (1983) 35 Cal.3d 329, 362.) [¶] Our Supreme Court has never departed from the opinion that 'During the guilt phase of a capital trial, it is misconduct for a prosecutor to appeal to the passions of the jurors by urging them to imagine the suffering of the victim. "We have

7

settled that an appeal to the jury to view the crime through the eyes of the victim is misconduct at the guilt phase of trial; an appeal for sympathy for the victim is out of place during an objective determination of guilt."' [Citations.]" (*People v. Vance* (2010) 188 Cal.App.4th 1182, 1192; *People v. Lopez* (2008) 42 Cal.4th 960, 969-970.)

Here, however, the prosecutor's comment was proper as a fair comment on how the evidence demonstrated that defendant intended to attempt to kill Kaplan. (*People v. Ward* (2005) 36 Cal.4th 186, 215.) The prosecutor did not urge the jurors to imagine Kaplan's suffering. Rather the prosecutor asked the jurors to consider the seriousness of defendant's attack upon Kaplan, which left him bleeding on the garage floor, a fact that was corroborated by the photographic evidence of Kaplan's injuries.

It is unlikely the jury misconstrued the prosecutor's comment or that any error was prejudicial. (*People v. Fields, supra,* 35 Cal.3d at p. 363.) The evidence was overwhelming against defendant. Defendant was a young man who attacked a vulnerable elderly man and caused significant injuries. Many witnesses identified defendant as the perpetrator and Kaplan's DNA was found on defendant's person. Additionally, the jurors were instructed that bias, sympathy, prejudice or public opinion should not influence the jury's decision and statements by the attorneys was not evidence. (CALCRIM Nos. 101 and 222.) It is presumed the jury followed its instructions. (*People v. Sandoval* (2015) 62 Cal.4th 394, 422.) The jury also did not find defendant acted with premeditation and deliberation, suggesting the jury was not influenced by emotion or passion. We conclude there was no prosecutorial error and hence no due process violation.

DEFENSE COUNSEL'S CLOSING ARGUMENT

The parties gave their closing argument on Monday morning, September 22, 2014. The reporter's transcript records 21 pages of closing argument by the prosecution and 34 pages of closing argument by the defense. According to the minute order for that day, defense counsel gave his closing argument between 10:33 a.m. and 12:07 p.m. The court had interrupted him at one point to tell him he should finish by noon. In denying defendant's motion for a mistrial, the court observed that defense counsel seemed to be deliberately delaying by rehashing and repeating his points. The court also found defense counsel had argued effectively in the final 10 minutes and defendant's rights had not been violated.

On appeal, defendant again argues the trial court erred by limiting defense counsel's closing argument to about one and one-half hours. The People contend the trial court did not abuse its discretion but the error, if any, was harmless.

"A criminal defendant has a well-established constitutional right to have counsel present closing argument to the trier of fact. (*People v. Marshall* (1996) 13 Cal.4th 799, 854.) '[The] right is not unbounded, however; the trial court retains discretion to impose reasonable time limits and to ensure that argument does not stray unduly from the mark.' (*Ibid.*)" (*People v. Benavides* (2005) 35 Cal.4th 69, 110.) The trial judge may control the duration and scope of closing argument: "He [or she] may limit counsel to a reasonable time and may terminate argument when continuation would be repetitive or redundant. He may ensure that argument does not stray unduly from the mark, or otherwise impede

9

the fair and orderly conduct of the trial.  In all these respects he must have broad discretion." (*Herring v. New York* (1975) 422 U.S. 853, 862.)  Even if the trial court abuses its discretion, the error must be prejudicial.  (*People v. Stout* (1967) 66 Cal.2d 184, 200.)

The evidence in this case was not very complicated.  In his primary argument, defendant did not dispute the facts of the attack.  Instead, defendant claimed he was wrongly identified and, in his closing argument, defense counsel thoroughly attacked the credibility and reliability of the identifications made by the two victims and the other witnesses.  Defense counsel also emphasized repeatedly that the police conducted a sloppy investigation.  Therefore, when defendant's closing argument became repetitive, the trial court had ample justification for limiting defense counsel's argument.  (*People v. Stout, supra,* 66 Cal.2d at p. 200, citing *People v. Fernandez* (1906) 4 Cal.App. 314, 321-323; *People v. Masters* (2016) 62 Cal.4th 1019, 1075.)

Furthermore, any error was harmless under any standard of review.  (*Glebe v. Frost* (2014) 135 S.Ct. 429, 430-431; *People v. Rogers* (2006) 39 Cal.4th 826, 871-872; *People v. Boyette* (2002) 29 Cal.4th 381, 428-429.)  Defendant was allowed to make the alternative argument that he lacked the intent to kill even though it was entirely inconsistent with his alibi defense.  The jury accepted his argument that there was no premeditation or deliberation.  In any event, there is no reasonable possibility defendant could have obtained a better outcome because the evidence of defendant's guilt was overwhelming as already discussed.

10

## IDENTIFICATION BY PHOTOGRAPHIC LINEUP

Kaplan, the victim, and his neighbors, Stroney and Hass, identified defendant in a six-pack photographic lineup. In the photograph, defendant had a faint tattoo over his right eyebrow and none of the other photographs depicted a tattoo. Defendant argues the lineup was unduly suggestive. The trial court denied defendant's motion to suppress the identifications, finding that the photographs were generally similar and the tattoo was not very visible.

"'In order to determine whether the admission of identification evidence violates a defendant's right to due process of law, we consider (1) whether the identification procedure was unduly suggestive and unnecessary, and, if so, (2) whether the identification itself was nevertheless reliable under the totality of the circumstances, taking into account such factors as the opportunity of the witness to view the suspect at the time of the offense, the witness's degree of attention at the time of the offense, the accuracy of his or her prior description of the suspect, the level of certainty demonstrated at the time of the identification, and the lapse of time between the offense and the identification.' (*People v. Cunningham* (2001) 25 Cal.4th 926, 989.) 'We review deferentially the trial court's findings of historical fact, especially those that turn on credibility determinations, but we independently review the trial court's ruling regarding whether, under those facts, a pretrial identification procedure was unduly suggestive.' (*People v. Gonzalez* (2006) 38 Cal.4th 932, 943.) 'Only if the challenged identification procedure is unnecessarily suggestive is it necessary to determine the reliability of the

11

resulting identification.' (*People v. Yeoman* (2003) 31 Cal.4th 93, 125.)" *People v. Alexander* (2010) 49 Cal.4th 846, 901-902.)

A defendant's photograph should not "stand out" by suggesting the witness should select him. (*People v. Yeoman, supra,* 31 Cal.4th at p. 124.) However, the photographs in a lineup need not be identical or indistinguishable. (*People v. Brandon* (1995) 32 Cal.App.4th 1033, 1052; *People v. Wimberly* (1992) 5 Cal.App.4th 773, 790.) Instead, an identification procedure will be deemed unfair only if it suggests a suspect's identity in advance of the witness's identification. (*Ibid.*) In the present case, the trial court determined the photographs were similar enough not to be impermissibly suggestive. (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1222; *People v. Gonzalez, supra,* 38 Cal.4th at p. 943; *People v. Ybarra* (2008) 166 Cal.App.4th 1069, 1082.) We will not reject the trial court's determination. (*Gonzalez,* at p. 943.)

Other evidence also supports the reliability of the identifications. Holtzman recognized defendant at a curbside lineup. She did not notice his facial tattoo until the trial. Kaplan "instantly" identified defendant's photograph a few days after March 17. Kaplan confidently recognized defendant at trial. Haas identified defendant's photograph based on his confrontation with him at the property. Haas relied on defendant's bone structure, not his facial tattoo. Stroney was able to identify defendant after watching him from his window. Stroney was also able to describe defendant's clothing, leading to his arrest. None of these identifications were based on defendant's facial tattoo. Thus, under the totality of circumstances there is no substantial likelihood of a suggestive misidentification. (*People v. Cunningham, supra,* 25 Cal.4th at p. 990.)

12

Finally, any error was harmless.  Two witnesses saw defendant changing his clothes near the dumpster where the police found Holtzman's purse and knitting bag. Kaplan's DNA on defendant's person further implicated him.  Defendant's implausible explanation that the blood was smeared on him by the true culprit was rejected by the jury.  Five witnesses identified defendant in court.  Any error in admitting pretrial identification evidence was harmless beyond a reasonable doubt.  (*People v. St. Germain* (1982) 138 Cal.App.3d 507, 519.)

VIII

DISPOSITION

We order the abstract of judgment be corrected to show a 16-month sentence on count 3.  The trial court is ordered to forward a copy of the corrected abstract to the Department of Corrections and Rehabilitation.  Subject to that modification, we affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

HOLLENHORST
Acting P. J.

SLOUGH
J.

13