[Civ. No. 27761. First Dist., Div. One. May 1, 1970.]

ROBERT DENNIS CRUEGER et al., Petitioners, v.
THE SUPERIOR COURT OF MONTEREY COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Hutton, Foley & Anderson and Peter D. Anderson for Petitioner.

Thomas C. Lynch, Attorney General, Derald E. Granberg and Sanford Svetcov, Deputy Attorneys General, for Respondent and for Real Party in Interest.

## OPINION

**SIMS, J.**—In this action an alternative writ of prohibition was issued to review petitioners' contention that they were committed on an information which charged both with possession of marijuana in violation of section 11530 of the Health and Safety Code, and with possession of amphetamine in violation of section 11910 of that code, without reasonable or probable cause, because their commitment was based entirely on incompetent evidence. It is concluded that the evidence before the magistrate did not require a finding as a matter of law that the evidence introduced at the preliminary hearing was the result of an illegal search and seizure. The alternative writ must be discharged, and the petition for a peremptory writ will be denied.

The contraband upon which the first charge is predicated was not originally seized by the officers, but was turned over to the officers after it was discarded by one of the petitioners who fled the scene following a traffic stop and investigation by the detaining officer. The amphetamine was discovered upon search of that petitioner after his arrest for possession of marijuana. The magistrate and the judge presiding in the superior court both found that the evidence of the circumstances did not require a finding that the petitioners' Fourth Amendment rights had been violated, and upheld the admission of evidence disclosed by the driver's flight, and that seized on further search after the petitioners were arrested. The crux of the matter is not whether the petitioners' actions in attempting to thwart examination by the officer was motivated by their fear that he was about to make an illegal search, but whether in fact there was initially a threat of an illegal search capable of being carried out. The propriety of police conduct should not depend on the subjective state of the suspect. It is concluded that the evidence permits the inference that there was no such threat until the action of the defendant passenger gave cause for further investigation.

An automobile in which the petitioners were, respectively, the driver and the front seat passenger was stopped by a highway patrol officer for a speeding violation. While at the car window on the driver's side, inquiring about the driver's license and the car's registration, the officer noticed a brown bag on the right front floorboard by the left foot of the passenger. The prosecutor's question, "And when you observed the bag what happened?" was greeted with an objection which was overruled. Rather than resting on the ruling, the prosecutor interposed a new question as to whether he, the officer, had written out a citation before seeing the bag. After giving a negative answer to this question, the officer volunteered, "I had noticed the passenger as I was attempting to stop the vehicle make a movement toward—" An objection to this answer was sustained because it was not responsive to the question. It will be assumed that the evidence was then

disregarded by the magistrate, although it might properly have been received as an explanation of why the officer looked before he cited. The sustaining of the objection does not establish that there was no furtive conduct before the car was stopped, but merely leaves the record blank as to what circumstances other than speeding marked the vehicle or its occupants prior to the stop.

The prosecutor did not pursue the matter by further question, but asked "Did you observe anything unusual in the car?" and elicited the answer, "Just that the bag was down there and it was by his foot, and I just asked him what was in the bag. He says—" The prosecutor himself interrupted the witness, and the record fails to reveal the reply made by the passenger while the officer was still at the driver's side of the car. Further questioning established that the passenger was not doing anything with the bag at that time, that it was by his foot, and that he was not touching it.

After the officer "asked the passenger if [he] might see inside of it, see the bag," he went around to the passenger's side. According to the officer, the passenger "picked the bag up, said all that was in it was paper, he threw it to the driver." The officer then walked around to the driver's side. A game of "keep away" then ensued, and was interrupted by the officer ordering the passenger out of the car. It was then that the driver fled with the bag and dropped it over a fence whence it was retrieved and given to the officer by a passing motorist. An examination of the contents of the bag gave reasonable cause for the arrest of the driver and the passenger, and the subsequent searches and seizure of further contraband.

It is obvious that the contraband in the paper bag was not obtained as a result of any search or seizure by the officer.

In *Badillo* v. *Superior Court* (1956) 46 Cal.2d 269 [294 P.2d 23] the court ruled, "The attorney general contends that defendant abandoned the evidence when he threw it toward Agent Hipkins and that therefore he may not object to its use against him. It clearly appears, however, that defendant's flight out the front door and attempted disposal of the evidence was the direct result of Officer Getchell's illegal entry, and accordingly, the evidence was obtained in violation of constitutional guarantees. [Citations.]" (46 Cal.2d at p. 273.) The court had applied the rule that the burden was on the prosecution to show justification for the entry of the premises from which the suspect fled, because there was no evidence of a search warrant. In the absence of proof of probable cause it was taken as established that the entry was unlawful. (*Id.*, p. 272.) Here there was nothing unlawful in the action of the officer in asking the passenger what was in the bag, or in going around to the passenger's side and asking him if he might see inside it—see the bag. If there was any impropriety, it must have occurred

before the passenger accompanied his innocent answer with the inconsistent and guilt-indicative act of tossing the bag to the driver. That action, indicating the palpable falsity of the answer, gave reasonable cause for the officer to pursue his further investigation. (See *People* v. *Weitzer* (1969) 269 Cal.App.2d 274, 291-293 [75 Cal.Rptr. 318].) Did the officer so conduct himself as to indicate as a matter of law that he was about to carry out and was capable of carrying out an illegal search?

In *Gascon* v. *Superior Court* (1959) 169 Cal.App.2d 356 [337 P.2d 201], the court applied *Badillo* and ruled, "In the present case petitioner's flight was caused by the *threat* of the officers to illegally search his person which they could, without question, have put into effect, and the discarding by the petitioner of the evidence upon his person was but a product of the *threat.*" (169 Cal.App.2d at p. 358, italics added.) In *People* v. *Stout* (1967) 66 Cal.2d 184 [57 Cal.Rptr. 152, 424 P.2d 704], the court observed, "The facts in the instant case do not disclose an actual completed invasion of constitutional rights as in *Badillo*. The question confronting us here is whether there was a threat of such an invasion capable of execution and sufficient to cause defendants' flight and disposal of the bag so that we must conclude, as the court did in *Gascon*, that the evidence eventually obtained was the product of an attempted illegal act of the officer." (66 Cal.2d at p. 191.) The opinion recites, "Stout's suspicious conduct in the instant case fully justified the inquiries made by Officer Ankenbauer. However, unlike *Gascon* where the officers announced their intentions to search the defendant, Ankenbauer in the instant case merely voiced a request to look in the bag. There was no response from the suspects. At that point he started walking toward the passenger's side of the car. Conceivably his request could have been met with a refusal upon his reaching his destination. At no time did he inform defendants that he *was going* to search the bag and we cannot say as a matter of law that what was outwardly only a request, even when conjoined with his conduct, amounted to an announced intention to search.

"Defendants argue that, when Ankenbauer started to walk around to the other side of the automobile, they were entitled to conclude that he was about to make an illegal search even though they had made neither a response to his question nor any effort to ascertain his intentions. All of the circumstances of the incident were presented to the trial court during the *voir dire* examination had upon application of defendants (see fn. 3, *ante*)."[1] (*Id.*, p. 192.)

[1]The footnote referred to states: "In response to the prosecutor's questions Ankenbauer testified as follows: 'Q. I see. Now, at that time when you walked around the car, you were going to what place? A. Around to the passenger's side of the car to continue the conversation with Mr. Stout regarding the bag. Q. I see. Were you going

Review in this case is handicapped by the apparent failure of both counsel to bring out ". . . all of the circumstances of the incident" which preceded the passenger's action of throwing the bag to the driver. This court must take the record as it finds it, and it does not appear, as in *Gascon,* that there was a threat as a matter of law. ■ The matter is controlled by *People* v. *Stout, supra,* in which the court concluded, "Whether there was a threat of an illegal search capable of being carried out was a question of fact to be determined by the court in the light of all the circumstances. [Citations.] This question was determined adversely to defendants and such determination finds substantial evidentiary support in the record before us. We conclude that the court below properly overruled defendants' motion to suppress the evidence." (*Id.,* p. 192. See also *People* v. *Miles* (1969) 2 Cal.App.3d 324, 327 [82 Cal.Rptr. 644].)

The following rules laid down in *Badillo* are also pertinent, "In *Rogers* v. *Superior Court, ante,* p. 3 . . . we held that a 'defendant has been held to answer without reasonable or probable cause if his commitment is based entirely on incompetent evidence,' (*ante,* at p. 7) and accordingly, in such a case the trial court should grant a motion to set aside the information (Pen. Code, § 995), and if it does not do so, a peremptory writ of prohibition will issue to prohibit further proceedings. (Pen. Code, § 999a.) No problem is presented in applying this rule in cases involving searches and seizures in which the facts bearing on the legality of the search or seizure are undisputed and establish as a matter of law that the evidence is or is not admissible. In many cases, however, the evidence before the magistrate bearing on this issue may be in conflict or susceptible of conflicting inferences or consist only of the testimony of prosecution witnesses, and under these circumstances the court in ruling on a motion to set aside the information will frequently not be in a position to make a final determination as to the admissibility of the evidence. ■ Accordingly, the information should not be set aside on the ground that essential evidence was illegally obtained if there is any substantial evidence or applicable presumption to support a contrary conclusion [citations], and in such cases the ultimate decision on admissibility can be made at the trial on the basis of all of the evidence bearing on the issue. [Citations.] ■ In the absence of evidence to the contrary, it is presumed that the officers acted legally [citation], and if the issue is raised for the first time on a motion to set aside the information, the motion should be denied unless the evidence before the committing magistrate establishes that essential evidence was

---

to talk to Mr. Stout further before you did anything respecting the bag? A. Yes. Q. And were you going to ask Mr. Stout any other questions respecting the bag? A. Yes. Q. Were you going to ask him if he would let you look in the bag? A. That's right. Q. Again? A. Yes.' " (66 Cal.2d at p. 190, fn. 3.)

illegally obtained." (46 Cal.2d 269, 271-272. See also *People* v. *Heard* (1968) 266 Cal.App.2d 747, 749-750 [72 Cal.Rptr. 374]; and *People* v. *Sullivan* (1963) 214 Cal.App.2d 404, 409-410 [29 Cal.Rptr. 515].)

Nothing herein should be considered as precluding review of the petitioners' contentions in the light of such further and more complete evidence as may be adduced in future proceedings.

The alternative writ is discharged and the peremptory writ is denied.

Molinari, P. J., and Elkington, J., concurred.