[Crim. No. 29852. Second Dist., Div. One. Dec. 5, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES KEITH TUCK, Defendant and Appellant.

**COUNSEL**

Robert A. Schwartz, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Nancy A. Saggese, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**LILLIE, Acting P. J.**—Defendant was found guilty of possession for sale of marijuana, and appeals from the judgment. His challenge is to order denying motion pursuant to section 1538.5 Penal Code.[1]

Around 11 p.m. Officers Ichikawa and Hernandez, plainclothes officers on duty and driving an unmarked police vehicle beige in color, observed a Toyota station wagon being driven by one Thomas,[2] and in which defendant was a passenger, traveling "at a high rate of speed through a dip" in a strictly residential area—45 to 50 miles per hour; they followed it to get close enough to read the license plate; it finally stopped at a red light and they observed the rear license number and that there was no illumination on the plate; as the station wagon proceeded across the intersection, they activated a handheld red light placed in the center of the windshield, alternately turned the headlights from high to low beam and sounded the horn at which time Thomas turned his head in their direction, turned back and continued to the onramp to the freeway; at this time defendant turned his face in their direction then turned back and moved restlessly in his seat; on the freeway they continued to direct the light on the station wagon and honk the horn; following one and one-half car lengths behind the station wagon in the right lane, they observed the right passenger door open several times, then at the overpass saw the door open and defendant hold out a large brown paper bag which fell to the street, and three large bricks of marijuana and several baggies containing marijuana and marijuana debris fall out of the bag and tumble into the gutter; they brought the station wagon to a stop three and one-half blocks away.

As defendant exited the station wagon Officer Ichikawa detected a very strong odor of burned marijuana about him and in the vehicle; he said the car belonged to his mother. The officers detained defendant and Thomas for investigation of possession of marijuana, then Officer Hernandez returned to where he had seen defendant throw out the items; he found a bag with 15 baggies lying next to the gutter and three "bricks" of marijuana alongside the curb. Defendant and Thomas were arrested; a later search of the station wagon revealed a metal scale on the rear floorboard behind the driver's seat.

---

[1]The motion was submitted on the transcript of testimony taken at the preliminary hearing, thus our summary of facts is based entirely upon that evidence.

[2]Earl Howard Thomas was charged as a codefendant; he is not a party to this appeal.

Appellant's position is that the contraband was seized as a direct result of the officers' illegal conduct in attempting to stop the station wagon—that had the officers not been unlawfully following them and trying to stop the vehicle, he would not have thrown out the contraband. The illegal conduct attributed to the officers is (1) their detention of the station wagon at a time they were out of uniform and not in a marked vehicle, and (2) detention of the station wagon without reasonable cause. In this connection we note first, and as conceded by appellant in his brief recounting the evidence at trial, that Officers Ichikawa and Hernandez were assigned by the Los Angeles Police Department to a special problems operational team and their specific assignment that evening was to concentrate on the heavy burglary occurrence area; and second, they were neither traffic officers nor on duty for the exclusive or main purpose of enforcing the traffic laws.

Appellant argues that section 40800 Vehicle Code[3] prohibits plainclothes officers in unmarked vehicles from stopping motorists for traffic violations; thus their attempts to stop the station wagon and its ultimate detention were illegal. **(2)** The fallacy of this argument is twofold—(1) the evidence fails to support the application of section 40800, and (2) even if the statute is applicable, it does not prohibit a traffic officer out of uniform and using an unmarked vehicle from detaining and arresting a driver for a speed violation, but if he does so, section 40804 Vehicle Code[4] renders him incompetent as a witness in a prosecution of the charge. Section 40800 appears in chapter 3 under the title "Illegal Evidence," and is followed by sections 40801, 40802 and 40803 relating to speed traps and prohibiting use of speed trap evidence, and section 40804 making an officer not in uniform and driving an unmarked vehicle who has arrested a driver for a speed violation incompetent to testify as a witness in a prosecution of the charge.

Appellant argues that even though Ichikawa and Hernandez were Los Angeles police officers patrolling the streets that evening on

---

[3]Section 40800 Vehicle Code provides in pertinent part: "Every traffic officer on duty for the exclusive or main purpose of enforcing the provisions of Division 10 or 11 of this code shall wear a full distinctive uniform, and if the officer while so on duty uses a motor vehicle, it must be painted a distinctive color specified by the commissioner."

[4]Section 40804 Vehicle Code in pertinent part provides: "(b) Every officer arresting, or participating or assisting in the arrest of, a person so charged [for a violation involving speed] while on duty for the exclusive or main purpose of enforcing the provisions of Divisions 10 and 11 is incompetent as a witness if at the time of such arrest he was not wearing a full distinctive uniform or was using a motor vehicle not painted the distinctive color specified by the commissioner."

specific assignment to concentrate on a heavy burglary occurrence area, they nevertheless attempted to stop the station wagon to enforce Vehicle Code section 22350 and they were out of uniform and using an unmarked vehicle thus section 40800 would apply. But this is not what the statute provides. By its language it applies only to a "traffic officer on duty for the exclusive or main purpose of enforcing the provisions of Division 10 or 11." Moreover section 40800 neither prohibits an officer not in uniform and not in a marked vehicle from detaining and arresting a driver for a speed violation nor makes his actions unlawful. The enforcement provision is found in the prohibition of the use of his testimony in the prosecution of the speeding violation (§ 40804). Section 40800 was not intended to apply in a case in which an officer was on the street for some purpose not connected with vehicle act violations; and it does not forbid him to turn aside from such purpose in order to arrest a driver for a traffic infraction. (*People* v. *Stewart,* 107 Cal.App.Supp. 757, 761 [288 P. 57].) Finally, once the officers, even though not in uniform or in a designated patrol car, observed the speeding vehicle in a residential area it was a proper exercise of their authority as peace officers to stop the driver, for they had reasonable cause to believe that the driver of the station wagon had committed a public offense in their presence (§ 836, subd. 1, Pen. Code) "Public offense" includes misdemeanors and traffic infractions as well as felonies. (*People* v. *Tennessee,* 4 Cal.App.3d 788, 791 [84 Cal.Rptr. 697].)

Assuming section 40800 to be inapplicable, appellant asserts that the officers lacked reasonable grounds to detain the station wagon. In the testimony taken at the preliminary hearing and reviewed by the court on the section 1538.5 motion, there appears to be no conflict in the evidence as to the speed of the station wagon and that it was traveling in a strictly residential area, and that the officers followed it for some distance. Officer Ichikawa testified that it was traveling "at a high rate of speed" and, according to Officer Hernandez, between 45 and 50 miles an hour. Thus in light of the foregoing and in the absence of a posted sign in the area to indicate otherwise, any speed over 25 miles an hour was in excess of the speed limit.[5] Thus it is clear that the officers could have stopped

---

[5]Section 22352 Vehicle Code provides in pertinent part: "The prima facie limits are as follows and the same shall be applicable unless changed as authorized in this code and, if so changed, only when signs have been erected giving notice thereof;

". . . . . . . . . . . . . .

"(b) *Twenty-five miles per hour:*

"(1) . . . in any business or residence district unless a different speed is determined by local authority under procedures set forth in this code." (Italics added.)

the vehicle in which defendant was riding for a violation of the speed law and detained the driver therefor. There is also evidence that another traffic infraction occurred—failure to have illumination on the rear license plate. Having reasonable cause to believe a public offense had been committed in their presence, the officers had the right and indeed the duty to stop the driver of the station wagon.

Finally appellant contends that the evidence was obtained as a direct result of the unlawful detention of the station wagon and threat of an illegal search. Appellant argues that his attempt to dispose of the contraband by throwing it out of the car was a direct response to the officers' illegal actions directing the station wagon to stop. Appellant's argument that because the station wagon was not free to ignore the police signals and to continue on its way the officers "unlawfully restrained the liberty of the station wagon once they began their efforts to direct it to stop for a speeding violation," assumes that a detention of the vehicle occurred at the time police started to follow it and turned on their lights and sounded their horn for the driver to stop. The evidence supports no reasonable inference of restraint of the station wagon until it actually came to a stop on the freeway. The rule that the detention permitted to issue a citation for a minor traffic violation such as speeding, is limited in scope and time (*People v. Podesto,* 62 Cal.App.3d 708, 715 [133 Cal.Rptr. 409]) implies a stop by the officers or a holding in custody. The implication is clear in the limitation in scope of the detention to requesting the driver for identification and production of his driver's license and registration certificate for the vehicle and interrogating him concerning the violations the officer had observed. Absent other circumstances, the officers may not search the driver or his vehicle or detain the driver for investigation of matters unrelated to the traffic stop and beyond the time necessary to issue his citation for the traffic offense. (*People v. Superior Court (Simon)* 7 Cal.3d 186, 201-202 [101 Cal.Rptr. 837, 496 P.2d 1205]; *People v. Superior Court (Kiefer)* 3 Cal.3d 807, 815 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559].)

This brings us to appellant's claim that he threw the marijuana out of the car "in anticipation of what would be an unlawful search" of the station wagon, which, of course, assumes that had the officers stopped it for the speeding violation they would have unlawfully searched the vehicle and unlawfully discovered the contraband and seized it. Speculating that such illegal official action would have occurred, appellant says he was justified in divesting himself of the marijuana thus the contraband cannot be considered as having been voluntarily abandoned.

■ We have hereinabove stated the rule that officers having stopped a vehicle for a traffic infraction cannot detain an occupant for any reason not related to that infraction, and absent other circumstances (not here present) cannot search him or the vehicle. ■ And we cannot assume that Officers Ichikawa and Hernandez would have committed an unlawful act in the performance of their official duties and conducted an illegal search of the station wagon had they stopped it for a traffic infraction. There is no evidence that an unlawful search was threatened (*People* v. *Stout,* 66 Cal.2d 184, 191-192 [57 Cal.Rptr. 152, 424 P.2d 704]) and no evidence of official conduct that would lead reasonable persons riding in the vehicle to believe that a stop for a traffic violation would result in an illegal search. Certainly there was no actual completed invasion of defendant's constitutional rights as in *Badillo* v. *Superior Court,* 46 Cal.2d 269 [294 P.2d 23] relied on by appellant. In *Badillo* defendant fled out the front door and attempted to dispose of a package of heroin toward the officers which actions the court held to be the direct result of the officers' illegal entry to the house (p. 273).

As stated in *Crueger* v. *Superior Court,* 7 Cal.App.3d 147, 149 [86 Cal. Rptr. 555], "The crux of the matter is not whether the petitioners' actions in attempting to thwart examination by the officer was motivated by their fear that he was about to make an illegal search, but whether in fact there was initially a threat of an illegal search capable of being carried out. The propriety of police conduct should not depend on the subjective state of the suspect." The evidence compels the inference that there was no such threat of a search by the officers until defendant threw the contraband into the street, which action gave cause for further investigation. This disposition of the contraband constituted a voluntary abandonment by defendant. Having observed the content of the paper bag as it was thrown from the station wagon and tumbled onto the street and concluded that it was marijuana, the officers had reasonable cause to stop defendant and detain him on suspicion of possession of marijuana. The arrest which followed the detention during which the actual fact of the narcotic nature of the contents of the bag was being tentatively established, was thus clearly warranted. (*People* v. *Siegenthaler,* 7 Cal.3d 465, 470 [103 Cal.Rptr. 243, 499 P.2d 499].) When the officer returned to the location where the items of contraband had been thrown by defendant he properly took them into possession having found them to have been abandoned on the side of the road in the gutter, and in plain view. (*People* v. *Siegenthaler,* 7 Cal.3d 465, 470 [103 Cal.Rptr. 243, 499 P.2d 499].) ■ A search and seizure of abandoned property is not unlawful. (*People* v. *Long,* 6 Cal.App.3d 741, 749 [86 Cal.Rptr. 227].) A

close examination of the contents of the bag gave reasonable cause for the arrest of defendant and the subsequent search of the station wagon and seizure of the scale.

The judgment is affirmed.

Thompson, J., and Hanson, J., concurred.