[Crim. No. 18998. First Dist., Div. One. Dec. 21, 1979.]

THE PEOPLE, Plaintiff and Appellant, v.
CHARLES EDWARD MENIFEE et al., Defendants and
Respondents.

COUNSEL

George Deukmejian, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Herbert F. Wilkinson and Ina Levin Gyemant, Deputy Attorneys General, for Plaintiff and Appellant.

Fred Baker, George P. Colbert and Mark Rosenbush for Defendants and Respondents.

OPINION

RACANELLI, P. J.—On the People's appeal from an order of dismissal following the suppression of evidence, we must determine whether substantial evidence exists to support the trial court's findings that the evidence seized was abandoned as a result of the threat of an illegal detention. We conclude the findings are adequately supported and the order granting suppression was proper; we affirm.

### FACTS

On the afternoon of July 31, 1978, undercover narcotics officers Marr and Bosshard were walking down Jennings Street toward Fitzger-

ald Street, an area of known narcotics activity. Officer Marr saw defendants Menifee and Curry walk around the corner of Fitzgerald and Jennings heading in his direction. When the defendants saw Officer Marr, whom they knew, they abruptly turned and walked in the opposite direction with Officer Marr in brisk pursuit.[1] As the defendants reached the corner, Menifee tossed a black pouch into a trash can while Curry continued several feet farther entering a liquor store where he placed a brown pouch on one of the shelves. Officer Marr retrieved the black pouch from the trash can and promptly detained Menifee. Curry's actions had been observed by a third officer (Harbor) who recovered the brown pouch from the liquor store after directing Marr to detain Curry. The pouches contained a quantity of heroin resulting in the filing of the present criminal charges. Following a suppression hearing, the trial court found that defendant Menifee's abandonment was the result of a threatened illegal detention and that Curry's abandonment was tainted by the illegality of the police activity with respect to Menifee.

## I

The People's principal contention is based upon a claim of voluntary abandonment of the pouch by defendant Menifee without threat of detention.

We begin with the general proposition that property abandoned on a public street and in plain view may be properly seized by police officers independent of a valid arrest. (*People* v. *Siegenthaler* (1972) 7 Cal.3d 465, 470 [103 Cal.Rptr. 243, 499 P.2d 499].) However, it has long been recognized that where the abandonment is the direct result of unlawful police *conduct* or threat of such conduct, then the evidence so seized is the product of an illegal act in violation of constitutional guarantees and thus inadmissible. (*Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 273 [294 P.2d 23], [contraband thrown during flight following an unlawful entry]; *Gascon* v. *Superior Court* (1959) 169 Cal.App.2d 356, 359 [337 P.2d 201] [attempted disposal of marijuana package during flight following threatened unlawful search].) While we

---

[1]The record discloses that by the time the defendants had retraced the 8-10 feet to the corner, Officer Marr had rapidly closed the distance from the point of his original observation (20-30 feet away) to 1 foot behind the defendants.

have discovered no reported case upholding the suppression of evidence based on a claim of involuntary or coerced abandonment under threat of an illegal *detention*, the rationale of the *Badillo-Gascon* rule would seem to logically extend to *any* threatened unconstitutional intrusion including detentions. (Cf. *People* v. *Stout* (1967) 66 Cal.2d 184 [57 Cal.Rptr. 152, 424 P.2d 704]; *People* v. *Robinson* (1976) 58 Cal.App.3d 363 [129 Cal.Rptr. 915]; *People* v. *Tuck* (1977) 75 Cal. App.3d 639 [142 Cal.Rptr. 362]; *People* v. *King* (1977) 72 Cal. App.3d 346 [139 Cal.Rptr. 926].) ▮ Since the record is barren of any evidence to support a reasonable suspicion of criminal activity, Officer Marr possessed no justification to effect a lawful detention. (See *In re Tony C.* (1978) 21 Cal.3d 888 [148 Cal.Rptr. 366, 582 P.2d 957].) Neither presence in an area of high narcotics use nor the deliberate avoidance of police contact—without more—constitute sufficient grounds for a lawful detention. (*People* v. *Bower* (1979) 24 Cal.3d 638, 645, 648 [156 Cal.Rptr. 856, 597 P.2d 115].) Thus we must examine whether the evidence supports a *threat* of unlawful detention as found by the trial court.

## II

Whether a threat of illegal detention exists is a question of fact to be determined by the court in light of all the circumstances. (Cf. *People* v. *Stout, supra*, 66 Cal.2d 184, 192.) In reviewing a Fourth Amendment claim turning upon factual considerations, we may not reweigh the evidence and must indulge in any inference reasonably drawn by the trial court. (*People* v. *King, supra*, 72 Cal.App.3d 346, 349.) If the trial court's "determination of [an] implicit factual question finds substantial support in the record...we are therefore bound by it." (*In re Michael V.* (1974) 10 Cal.3d 676, 683 [111 Cal.Rptr. 681, 517 P.2d 1145].) Thus, while Officer Marr's rapid pursuit of the defendants could be reasonably viewed as being motivated solely by a desire to greet the defendants as he testified, it is equally reasonable to infer that the undercover narcotics officer intended to detain defendant Menifee upon observing him in a known area of high narcotics activity. As we explained in a somewhat similar factual context, such ambiguous conduct might reasonably support "an inference of an intended and actual detention" and which—upon review—precludes substituting our deductions for those of the trial court. (*People* v. *King, supra,* 72 Cal.App.3d at pp. 349-350; see also *People* v. *Escarcega* (1974) 43 Cal.App.3d 391, 394 [117 Cal.Rptr. 595]; cf. *People* v. *Tuck, supra,* 75

Cal.App.3d 639, 646.[2]) That determination rests not on an evaluation of the subjective state of mind of the defendants (cf. *Crueger* v. *Superior Court* (1970) 7 Cal.App.3d 147, 149 [86 Cal.Rptr. 555]), but rather upon the fact-finder's reasoned conclusion that an unlawful detention was imminent. In such circumstances, we cannot say as a matter of law that the officer's conduct did not amount to a threat of illegal detention (see *People* v. *Stout, supra,* 66 Cal.2d at p. 192) which rendered the contents of the pouch discarded by defendant Menifee inadmissible under the *Badillo-Gascon* rationale.

## III

We are governed by similar principles in reviewing the findings relating to the evidence seized from the liquor store. The People contend that the independent observations of Officer Harbor provided sufficient justification for the detention of defendant Curry and the resulting seizure of the pouch placed upon the shelf. Again, while the record would equally support such an inference, substantial evidence existed that much of what Officer Harbor observed was the direct result of Officer Marr's imminent unlawful intrusion. Where such observations are the product of illegal police activity, they are just as tainted as the evidence which is illegally seized. (Cf. *People* v. *Dowdy* (1975) 50 Cal.App.3d 180, 187 [123 Cal.Rptr. 155].) In granting suppression of the evidence relating to defendant Curry, the trial court impliedly recognized this principle; that determination is binding on appeal. (See *In re Michael V., supra,* 10 Cal.3d 676, 683.) Accordingly, the evidence was likewise properly suppressed.

The order below is affirmed.

Newsom, J., and Grodin, J., concurred.

A petition for a rehearing was denied January 18, 1980.

---

[2]*People* v. *Robinson, supra,* 58 Cal.App.3d 363, upon which the People rely, is factually distinguishable. In *Robinson,* reversal was required by reason of the trial court's erroneous legal conclusion and its failure to find whether the defendant's flight and disposal of the pistol into a trash can were "products of a threat to engage in unlawful conduct." (*Id.* at p. 366.)