[No. D008581. Fourth Dist., Div. One. Mar. 20, 1990.]

In re CHRISTOPHER B., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER B., Defendant and Appellant.

**COUNSEL**

Veronica A. Roeser, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Rudolf Corona, Jr., and Yvonne H. Behart, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**HUFFMAN, J.**—Christopher B., a minor, appeals from an order of the juvenile court entered under Welfare and Institution Code section 602 finding he possessed rock cocaine for sale (Health & Saf. Code,[1] § 11351.5). Christopher contends the court erred (1) in denying his Penal Code section 1538.5 motion to suppress the cocaine he discarded as the fruit of an illegal police detention, and (2) in finding he possessed cocaine for sale without finding he had the specific intent to sell. We conclude the court properly denied the suppression motion, but committed error in finding Christopher possessed the cocaine for sale. Accordingly, we reverse.

### Factual and Procedural Background

At about 5:45 p.m. on June 4, 1988, San Diego Police Officer Charles Roger Barrett, along with other officers in uniform assigned to the Street Gang Task Force, drove to Martin Luther King, Jr., Park in the vicinity of 6300 Skyline Drive to monitor gang activity. There he saw a group of 20 to 25 males in the center of the park, in a grassy area at the bottom of a hill. Each male was wearing at least one item of red clothing which signified to Barrett membership in the East Side Piru Gang.

While Barrett did not see any members of the group using drugs, Officer James Hergenroether, Barrett's partner and cover officer, saw some minors holding cigarettes in their hands. Barrett then parked the patrol car approximately 10 to 15 feet from a group of about 10 to 15 males. Hergenroether got out of the passenger's side, carrying a nine-millimeter semiautomatic rifle in low ready position. Barrett got out from the driver's side. Two or three other marked police units with about six armed, uniformed officers parked by a nearby clubhouse and by the grass area of the park. The other officers were 15 to 20 feet from Hergenroether, who was 10 to 15 feet from Christopher. Barrett, as contact officer, approached the group intending to talk to them about wearing their colors in the public park. He did not single out any individual.

As the officers approached, the group as a whole began walking away. While Christopher was walking away with the group, he lagged slightly behind, looked both ways, reached into his waistband, and pulled out a clear plastic bag and tossed it to the ground. Barrett looked at his partner and pointed to where the bag fell. Hergenroether, who also saw Christopher drop the bag, called out to Barrett, pointed at Christopher, and picked up the bag. Barrett then apprehended and arrested Christopher. The two-inch

---

[1] All statutory references are to the Health and Safety Code unless otherwise specified.

by two-inch bag contained fourteen "rocks" later identified by a criminalist as cocaine base.

Christopher was charged with violating the terms of his probation and with one count of possessing rock cocaine for sale. At the jurisdictional hearing on June 29, 1988, Barrett and Hergenroether testified consistently with the above stated facts. Concerning whether they had singled out Christopher or anyone else, both officers specifically testified they were merely watching the entire group.

Over hearsay and foundation objections, Barrett opined the quantity of cocaine in the bag dropped by Christopher was far too much for personal use. He thus concluded Christopher was possessing it for "sales" to other park goers.

After the officers' testimony, Christopher moved to have evidence of the drugs suppressed under Penal Code section 1538.5 as the fruit of an illegal detention. The court denied the motion and, at the close of the defense case, found true the allegations of the petition.

At the dispositional hearing on July 6, 1988, the court ordered Christopher continued as a ward of the court and continued him on probation conditioned upon his commitment to the San Diego County Ranch Facility for not more than 240 days. Christopher filed a timely notice of appeal.

DISCUSSION

I

Suppression of Evidence

Christopher contends the trial court erred in denying his Penal Code section 1538.5 motion, arguing the cocaine he discarded should have been suppressed as the fruit of an illegal detention. We disagree.

In reviewing a motion to suppress, we defer to the trial court's factual findings which are supported by substantial evidence and independently determine whether the facts of the challenged search and seizure conform to the constitutional standard of reasonableness. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].) In this case, the facts are undisputed. We thus independently review the decision, applying federal law, as well as state law where it does not conflict with the federal law, to evaluate the issues involved. (*In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744].)

■ Generally, a person contacted by a police officer has been "seized" or detained within the meaning of the Fourth Amendment only if, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed he [or she] was not free to leave." (*United States* v. *Mendenhall* (1980) 446 U.S. 544, 554 [64 L.Ed.2d 497, 509, 100 S.Ct. 1870]; *Terry* v. *Ohio* (1968) 392 U.S. 1, 16 [20 L.Ed.2d 889, 902-903, 88 S.Ct. 1868].) Not all encounters between police and citizens, however, are protected by the Fourth Amendment. Police may properly approach citizens for the purpose of crime prevention, i.e., investigatory stops, without any "objective justification." (*United States* v. *Mendenhall, supra*, 446 U.S. at p. 553 [64 L.Ed.2d at pp. 508-509], citing *Sibron* v. *New York* (1968) 392 U.S. 40 [20 L.Ed.2d 917, 88 S.Ct. 1889].)

In determining whether an encounter between the police and a citizen is protected under the Fourth Amendment, the court should not only consider all the circumstances involved, but should also consider (1) the public interest served by the seizure, (2) the nature and scope of the intrusion, and (3) the objective facts upon which the law enforcement officer relied in light of the officer's knowledge and expertise. (*Terry* v. *Ohio, supra*, 392 U.S. at pp. 20-25 [20 L.Ed.2d at pp. 905-908].) ■ ■ ■ ■ ■ Neither the officer's uncommunicated state of mind nor the subjective belief of the individual citizen is relevant to the determination of whether a police contact is a detention,[2] unless, in the case of the officer, his or her overt action would communicate that state of mind. (*People* v. *Franklin* (1987) 192 Cal.App.3d 935, 940 [237 Cal.Rptr. 840]; *People* v. *Bailey* (1985) 176 Cal.App.3d 402, 406 [222 Cal.Rptr. 235].)

Examples of conditions which might indicate a "detention" or "seizure" under a reasonable person standard include a threatening police presence, the display of a weapon by an officer, the physical touching of the citizen approached, or the officer's language or voice indicating compliance with police demands might be compelled. (*United States* v. *Mendenhall, supra*, 446 U.S. at p. 554 [64 L.Ed.2d at p. 509]; *Terry* v. *Ohio, supra*, 392 U.S. at p. 19, fn. 16 [20 L.Ed.2d at p. 905].) There is no bright line rule indicating the point at which police conduct becomes a seizure. The degree of intrusion will vary with each set of facts involving police conduct and the actions of the suspect. (*Michigan* v. *Chesternut* (1988) 486 U.S. 567, 573 [100 L.Ed.2d 565, 571-572, 108 S.Ct. 1975, 1979].)

---

[2] Since the passage of Proposition 8 in 1982 (Cal. Const., art. I, § 28), the subjective belief of the citizen set out in *In re Tony C.* (1978) 21 Cal.3d 888 [148 Cal.Rptr. 366, 582 P.2d 957], no longer applies in analyzing whether an encounter is a detention. (*In re Lance W., supra*, 37 Cal.3d 873). Rather the federal standard of analyzing the objective facts of the incident controls. (*Ibid.*)

In cases where an individual flees an approaching police officer, the United States Supreme Court has rejected the notion that any "investigatory pursuit" amounts to a seizure under the Fourth Amendment and has held mere police surveillance or approach does not constitute a detention. (*Michigan* v. *Chesternut, supra*, 486 U.S. 567, 574-576 [100 L.Ed.2d 565, 572-573, 108 S.Ct. 1975, 1980-1981.)

■ Relying on *People* v. *Washington* (1987) 192 Cal.App.3d 1120, 1126 [236 Cal.Rptr. 840], which held "[g]iving chase after an individual in a manner designed to overtake and detain or encourage the individual to give up his flight is a detention. . . ," Christopher argues he was unlawfully detained when the police officers focused on and began closing in on the group of people he was with in the park. While acknowledging Washington had been "singled out" by the police before a two-minute chase ensued in that case, and he had not been so singled out before the police here began surrounding the group in the park, Christopher asserts there should be no difference in a court's determination here from that made in *Washington* concerning whether a detention occurred. He cites to the trial court's comments for support of this position: "The attention of the officers was focused on a group that they were going to contact, and for purposes of attempting to, I guess, control gang activity in this particular park . . . . They . . . obviously were converging upon this, what they perceived to be a gathering of a gang . . . .

". . . . . . . . . . . . . . . . . .

"They were sweeping the area of all the people within their net, so to speak, looking for people with weapons, people that might pose a danger to them, and anyone conducting any type of illegal activity." As a member of the targeted group of the armed police net/gang operation, he claims it was objectively reasonable to believe he was not free to leave the park.

Further arguing his discarding of the "rocks" was in response to the officers' "attempt to detain the group" without reasonable suspicion of any criminal activity, Christopher contends the evidence was the fruit of that illegal detention and should have been suppressed. (*Wong Sun* v. *United States* (1963) 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407].)

Not only are the facts in *Washington* distinguishable from those in Christopher's case, the opinions in *Washington* and a line of cases following it contain language contrary to the existing federal standards set out in *Michigan* v. *Chesternut, supra*, 486 U.S. 567 [100 L.Ed.2d 565, 108 S. Ct. 1975] regarding seizures under the Fourth Amendment ensuing from the flight of

a suspect.[3] We therefore decline to follow the *Washington* line of cases, and look to those federal standards by which we are bound. (*In re Lance W., supra*, 37 Cal.3d 873.) We explain.

In *Washington, supra*, 192 Cal.App.3d at pages 1122-1123, the suspect was huddled with a small group of people talking in an open courtyard early in the evening. When the officers approached the area, the group "quickly" dispersed. Seeing the officers, the suspect turned and began walking briskly away. The officers followed him for a short distance and then called out to him. The suspect asked, "Who me?" and when an officer replied, "Yes," the suspect started running away. As the suspect was running, the officers saw him discard a plastic bag containing cocaine. The suspect was apprehended a short time after the bag was scooped up. (*Ibid.*)

Relying upon the reasoning of *People* v. *Menifee* (1979) 100 Cal.App.3d 235 [160 Cal.Rptr. 682], decided before *Mendenhall* and Proposition 8, which held even the threat of an illegal detention was sufficient to constitute a seizure under the Fourth Amendment, the court in *Washington* held the act of chasing after the fleeing suspect was "an overt manifestation of an officer's authority that restrains the liberty of a citizen[,]" and was therefore, a detention. (*Washington, supra*, 192 Cal.App.3d at pp. 1125-1126.)

The court in *Washington* paradoxically noted that it did "not say that whenever an officer follows an individual at a discrete but noticeable distance it constitutes a 'seizure'—to do so would paralyze an effective means of law enforcement. Surveillance is an established investigatory technique. But in a chase . . . it becomes indisputable that the officers' actions are meant to stop and detain a fleeing individual [Fn. omitted.]" (*People* v. *Washington, supra*, 192 Cal.App.3d at p. 1126.) The court found the seizure occurred two minutes before the suspect had abandoned the drugs, at the point he began running in response to the officer's answer. (*Id.* at p. 1127.) Based on *Menifee*, the court concluded a reasonable inference could be made from the two-minute foot chase that the officer "intended to detain" the suspect, and therefore an illegal seizure occurred as such was not supported by reasonable suspicion of criminal activity. (*Id.* at pp. 1126-1127.)

Contrary to the abandonment in *Washington,* the abandonment of the drugs here happened before Christopher was in any way singled out from the group walking away from the police officers. Any chase that occurred

---

[3] The *Washington* line of cases, which holds an illegal seizure has occurred the moment there is a threat of detention, is also directly in conflict with other California Court of Appeal cases, represented by *People* v. *Patrick* (1982) 135 Cal.App.3d 290 [185 Cal.Rptr. 325], which hold such "threatened detention" does not constitute a seizure under the Fourth Amendment.

came only after Christopher discarded the drugs in plain view of the officers. Moreover, no words were spoken to Christopher or other members of the group by the officers, as were apparently spoken in *Washington.* Under these circumstances, even if we were to follow the holding in *Washington,* we would find no detention occurred in this case.

Shortly after *Washington* was decided, however, the United States Supreme Court issued its decision in *Michigan* v. *Chesternut, supra,* 486 U.S. 567 which analyzed the type of police conduct constituting a detention. In that case, patrolling police officers observed two men talking on a public street. When one of the men looked up and saw the police car approaching, he turned and ran, with the officers following him in their patrol car "to see where he was going." (*Id.* at p. 569 [100 L.Ed.2d at p. 569, 108 S.Ct. at p. 1977].) Driving alongside the fleeing suspect, they saw him discard several packets of narcotics. (*Ibid.*) They had no articulable suspicion of criminal activity on which to base their pursuit until the suspect threw down the contraband.

In reviewing this factual scenario, the United States Supreme Court reversed the order to suppress the evidence, concluding the police conduct did not amount to a seizure. While leaving open the determination of what circumstances involving police pursuit could amount to a seizure, the court reaffirmed the test of *United States* v. *Mendenhall, supra,* 446 U.S. 544, that "the police can be said to have seized an individual 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he [or she] was not free to leave.' [Citations.]" (*Michigan* v. *Chesternut, supra,* 486 U.S. 567, 573 [100 L.Ed.2d at p. 572, 108 S.Ct. at p. 1979].), finding such test "is designed to assess the coercive effect of police conduct, taken as a whole." (*Id.* at p. 573 [100 L.Ed.2d at p. 572, 108 S.Ct. at p. 1979].)

The court reasoned that while the presence of a patrol car driving alongside a fleeing pedestrian could be somewhat intimidating (*Michigan* v. *Chesternut, supra,* 486 U.S. at p. 576 [100 L.Ed.2d at p. 573, 108 S.Ct. at p. 1981]), it was not so intrusive the suspect could "reasonably have believed he was not free to disregard the police presence and go about his business." (*Ibid.*) The court concluded: "The police therefore were not required to have a 'particularized and objective basis for suspecting [respondent] of criminal activity,' in order to pursue him. [Citation.]" (*Ibid.*)

California cases decided since *Chesternut* which follow the rationale of *Washington* that a seizure or detention occurs "at the moment [an officer] gives chase" misconstrue the federal standards enunciated in *Chesternut.*

In *People* v. *Raybourn* (1990) 218 Cal.App.3d 308 [266 Cal.Rptr. 884] and *People* v. *Salgado* (1990) 218 Cal.App.3d 300 [266 Cal.Rptr. 887], both of which followed *Washington,* the court in each case held the detention in each respectively occurred at the time the officer began to chase the suspect. Under their analysis, whenever a suspect fails to elude the police, a detention occurs retroactively to the point when the suspect ran and the officer followed, and the suspect believed there was no hope of escape. Further, under their analysis, the police conduct in *Chesternut* would constitute a detention—contrary to the holding of that case which permits an investigatory pursuit without constituting a seizure under the Fourth Amendment. (*Michigan* v. *Chesternut, supra*, 486 U.S. at p. 574 [100 L.Ed.2d at p. 572, 108 S.Ct. at p. 1980].)

We simply see no reasoned distinction between a police officer pursuing a fleeing suspect on foot and a police officer pursuing that suspect by patrol car. Both actions are done for the purpose of approaching the suspect. To the extent the language in the *Washington* line of cases suggests such a distinction, and holds that distinction constitutes a detention, we decline to follow them. The reasoning of those cases misinterprets the definition of "detention" as set out in *Chesternut,* which requires some coercive governmental action, beyond the act of pursuit, sufficient to lead a reasonable person to believe he or she was not free to leave.

We find the case of *People* v. *Patrick, supra*, 135 Cal.App.3d 290, which held a "threatened detention" does not constitute a seizure, instructive on this point. There, an officer pursued a suspect who bolted from a group of individuals in a high drug traffic area. During the chase, the suspect threw two objects over a fence. Although the court rested its analysis on the ground an illegal search will not inevitably follow an illegal detention, the court held there was no detention until the defendant was apprehended after discarding the contraband. Thus, the court in *Patrick* rejected the defendant's argument that a "threatened detention" forced him to discard the evidence.[4] Absent some coercive police conduct as set out in *Terry* v. *Ohio, supra,* 392 U.S. at page 19, footnote 16 [20 L.Ed.2d at page 905], an investigatory contact by police does not fall under the protections of the Fourth Amendment.

*Patrick* and *Chesternut* compel a conclusion there was no detention here. As noted earlier, several officers of the gang task force approached a large

---

[4]The court in *People* v. *Holloway* (1985) 176 Cal.App.3d 150 [221 Cal.Rptr. 394] seems to agree with this holding in *Patrick* regarding a voluntary abandonment of property when approached by police. "The appearance of a police officer, even when unexpected, would not lead an innocent citizen, by whose standards the propriety of all official conduct is to be measured, . . . to attempt to hurl his personal property into the night. [Fn. omitted.]" (*Holloway, supra,* at p. 156.)

group wearing gang colors in a public park to monitor possible gang activity. At no point did the officers single out Christopher or any other member of the group, or physically restrain any member of the group, until Christopher threw down the bag of cocaine. No coercive display of weapons,[5] use of language, gestures, or intention to detain members of the group occurred. At no point did the officers actively pursue any member of the group, even though all the testimony confirms the group—including Christopher—began to "walk away" from the officers as they approached. Under such circumstances, Christopher could not reasonably have felt compelled to discard the cocaine in his possession due to the police activity. The intrusion on Christopher's Fourth Amendment interests was at most negligible.

Moreover, this determination is supported by sound public policy. Preventing gang-related activities is an important public interest. The police executed a normal, established law enforcement procedure to monitor gang activity here. The officers themselves were members of a gang task force, experienced in the kinds of precautions required to approach a large number of potential gang members in a public setting. The intrusion into the liberty of the members of the group was insignificant, and the group felt free to move away from the approaching officers. Under such circumstances, the police activity could not be viewed as a coercive detention by a reasonable person. The substantial governmental interests of maintaining peace and preventing criminal activity outweigh the slight potential of restraints of freedom in this case. The court thus properly found there was no Fourth Amendment violation and correctly denied the motion to suppress.

## II

### Specific Intent

Christopher also contends the trial court erred in finding the prosecutor need not prove specific intent for possession for sale, and requests the court's true finding he possessed cocaine for sale be reversed. In the alternative, he requests the offense be reduced to simple possession. We shall reverse.

---

[5] Although the fact the cover officer, Hergenroether, carried his semiautomatic nine-millimeter rifle in low ready position as he got out of the police car and approached the group could be somewhat intimidating, that he carried it pointed downward and not toward any particular person is not so intrusive Christopher could "reasonably have believed that he was not free to disregard the police presence and go about his business." (*Michigan* v. *Chesternut, supra,* 486 U.S. 567, 576 [100 L.Ed.2d 565, 573, 108 S.Ct. 1975, 1981].) The trial court specifically found it was common for police officers to carry such weapons and found nothing unusual or intrusive under the circumstances where those weapons were not pointed at any specific person.

■ A person is guilty of the crime of illegal possession for the sale of cocaine (§ 11351.5) when he or she (1) exercised control over the cocaine, (2) had knowledge of its presence and knowledge of its nature as a controlled substance, (3) the substance was in an amount sufficient to be used for sale as a controlled substance, and (4) he or she possessed the controlled substance with the specific intent to sell it. (See CALJIC No. 12.01.) It is the government's burden to prove each element of the crime before a true finding can be made.

Here, after hearing all the evidence and arguments concerning the drug charge against Christopher, the trial court stated: "The People have to prove specific intent by the minor to sell, and that was not addressed in the argument by the People. My conclusion is it's not a specific intent crime. My view of the law is—and maybe I'm wrong—but my view of it is that if one is participating in possession of drugs, knowing that they are going to be sold, that is sufficient. Whether or not that person intends to do the selling themselves, intends to receive any money for it, or in any other manner participates in the actual negotiations. If they are in the stream of commerce, in other words knowing these are, one, drugs, and two, they're for sale, and eventually for sale, then I think that's sufficient.

"In this case, I find that this minor knew there was cocaine. That's evidenced by a lot of circumstances, including the fact he threw it down when the police arrived in something of a panic, and secondly, he knew they were going to be sold. Whether he was going to do the actual selling or just standing there holding them at the time, I don't know, but I don't think that's important. I think the important point is he knew they were going to be sold, and I think that's the circumstances of what occurred, and by his own conduct."

The court then concluded: "So I do find that the petition, in fact, is true. It's true beyond a reasonable doubt that this minor did possess rock cocaine base for the purpose of sale."

■ Although this record may circumstantially support a true finding of specific intent, the trial court made the erroneous legal conclusion that possession of cocaine for sale is not a specific intent crime. Thus the court found it unnecessary for the People to prove the element of specific intent or to make a finding of such intent. Instead the court based its finding that Christopher possessed cocaine for sale on Christopher's knowledge the "rocks" were to be sold. Absent a finding Christopher had the specific intent to sell, a true finding of possession for sale cannot be made. Therefore, we reverse the court's true finding and remand for a new trial under

the correct legal standard; the court must find all the elements present before making a true finding under section 11351.5.

## DISPOSITION

The order is reversed and remanded for a new trial consistent with this opinion.

Kremer, P. J., and Benke, J., concurred.

A petition for a rehearing was denied April 16, 1990, and appellant's petition for review by the Supreme Court was denied June 26, 1990.