[No. G009072. Fourth Dist., Div. Three. May 31, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
ABEL CEJA ARANGURE, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rule 976(b), part II of the Discussion is not published as it does not meet the standards for publication.

**COUNSEL**

R. E. Scott, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, and Esteban Hernandez, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**BEACOM, J.***—

### INTRODUCTION

Appellant was convicted by jury of violation of Health and Safety Code section 11359, possession of marijuana for sale. In a nonjury trial three

---

*Judge of the Orange Superior Court sitting under assignment by the Chairperson of the Judicial Council.

alleged prior terms of imprisonment were found to be true. He was sentenced to prison for five years.

■ Appellant makes two contentions on appeal: The lower court erred by (1) denying his motion to suppress under Penal Code section 1538.5 because the seizure of the evidence was the direct result of an illegal detention, and (2) failing to instruct the jury sua sponte on circumstantial evidence of specific intent pursuant to CALJIC No. 2.02.

## FACTS

About 2:45 p.m. on June 15, 1989, Officers Sotow and Harrelson of the Santa Ana Police Department were on duty in uniform in an unmarked car. They were near a small shopping center within an area known to the officers as a "hot spot" in Orange County for the sale and possession of controlled substances. Officer Harrelson had personally made 20 to 25 arrests in the area in a period of 90 days, primarily for marijuana sales. Officer Sotow parked the patrol car in the shopping center parking lot.

Officer Harrelson saw appellant standing next to a woman associated with known sellers and possessors of marijuana in front of a donut shop, about 30 feet away, "not doing anything." Appellant and the woman started walking toward a fruit store located about 20 feet from where they had been standing. Officer Harrelson decided to follow the woman. As he did so, appellant and the woman quickened their pace. So did Officer Harrelson. He jogged at about one-half to three-quarter speed between parked cars, to a point near the entrance to the fruit store.

Appellant entered the fruit store; the woman sat down on a brick planter outside the entrance. The officer observed appellant use his right hand to place a brown paper bag into a trash can adjacent to the front door. As the officer entered the store, appellant walked toward the counter area. The officer went to the trash can, opened it and took out the brown bag. He opened the bag and found clear plastic baggies containing marijuana. The bag was of the same size, shape, color, and consistency as the one appellant placed in the trash can. There were no similar articles in the trash can.[1]

Officer Harrelson then approached appellant and spoke to him for the first time. He told appellant to place his hands on his head. By the time appellant's arrest was accomplished his woman associate had disappeared.

[1] At the motion to suppress, the officer testified there were no similar articles in the trash can. However, at trial the officer testified there were other brown bags in the trash which he did not remove and inspect.

## DISCUSSION

## I

## THE MOTION TO SUPPRESS

### A. *The Law at the Time of the Trial*

In 1982, Proposition 8, the "Victim's Bill of Rights," was adopted by the electorate in California. In part, it enacted Article I, section 28, subdivision (d) of the California Constitution, the so-called "Truth in Evidence" clause, which abrogated the suppression of evidence seized in violation of the California, but not the federal, Constitution. (*In re Lance W.* (1985) 37 Cal.3d 873, 881-890 [210 Cal.Rptr. 631, 694 P.2d 744].) Consequently, decisions of the United States Supreme Court are second only to the original language of the Fourth Amendment in providing guidance on the subject.

At the time this motion was heard by the trial court, the closest federal case on point was *Michigan v. Chesternut* (1988) 486 U.S. 567 [100 L.Ed.2d 565, 108 S.Ct. 1975].[2] In that case the Michigan Court of Appeals ruled any "investigatory pursuit" of a person by the police necessarily constitutes a seizure under the Fourth Amendment of the Constitution. The State of Michigan urged the other extreme, arguing the Fourth Amendment ". . . is never implicated until an individual stops in response to the police's show of authority." (*Id.* at p. 572 [100 L.Ed.2d at p. 571].) The Supreme Court ruled that both parties ". . . in their attempts to fashion a bright-line rule applicable to all investigatory pursuits, have failed to heed this Court's clear direction that any assessment as to whether police conduct amounts to a

---

[2]The facts of that decision are reported as follows: "Early on the afternoon of December 19, 1984, four officers riding in a marked police cruiser were engaged in routine patrol duties in metropolitan Detroit. As the cruiser came to an intersection, one of the officers observed a car pull over to the curb. A man got out of the car and approached respondent Michael Mose Chesternut, who was standing alone on the corner. When respondent saw the patrol car nearing the corner where he stood, he turned and began to run. As Officer Peltier, one of those in the car, later testified, the patrol car followed respondent around the corner 'to see where he was going.' [Citation omitted.] The cruiser quickly caught up with respondent and drove alongside him for a short distance. As they drove beside him, the officers observed respondent discard a number of packets he pulled from his right-hand pocket. Officer Peltier got out of the cruiser to examine the packets. He discovered that they contained pills. While Peltier was engaged in this inspection, respondent, who had run only a few paces farther, stopped. Surmising on the basis of his experience as a paramedic that the pills contained codeine, Officer Peltier arrested respondent for the possession of narcotics and took him to the stationhouse. During an ensuing search, the police discovered in respondent's hatband another packet of pills, a packet containing heroin, and a hypodermic needle. Respondent was charged with knowingly and intentionally possessing heroin, tablets containing codeine, and tablets containing diazepam . . . ." (*Id.* at pp. 569-570 [100 L.Ed.2d at p. 569].)

seizure implicating the Fourth Amendment must take into account ' "all the circumstances surrounding the incident" ' in each individual case." (*Ibid.* [100 L.Ed.2d at p. 571], quoting *INS* v. *Delgado* (1984) 466 U.S. 210, 215 [80 L.Ed.2d 247, 254-255, 104 S.Ct. 1758]; and *United States* v. *Mendenhall* (1980) 446 U.S. 544, 554 [64 L.Ed.2d 497, 509, 100 S.Ct. 1870].) "The test provides that the police can be said to have seized an individual 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " (*Michigan* v. *Chesternut, supra,* at p. 573 [64 L.Ed.2d at p. 572], quoting *United States* v. *Mendenhall, supra,* at p. 554 [64 L.Ed.2d at p. 509].) The test was stated to be "imprecise" (*ibid.* [100 L.Ed.2d at p. 572]), "flexible" (*ibid.* [100 L.Ed.2d at p. 572]), and "objective" (*ibid.* [100 L.Ed.2d at p. 572].) "The test's objective standard—looking to the reasonable man's interpretation of the conduct in question—allows the police to determine in advance whether the conduct contemplated will implicate the Fourth Amendment. [Citation omitted.] This 'reasonable person' standard also ensures that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual being approached." (*Ibid.* [100 L.Ed.2d at p. 572].)

The similarities between this case and *Chesternut* are: It was early afternoon; the events occurred in a public place; the officer was in uniform; the officer did not observe any illegal activity on the part of the subject; the officer pursued a subject to observe him; the officer did not obstruct the movement of the subject; the officer, while presumably armed, did not draw or display a weapon; and the officer did not issue commands or even speak to the subject until he was placed under arrest.

The dissimilarities are: In *Chesternut,* the officers were in a car rather than on foot and the officers' focus was on a subject who was observed standing alone prior to running from police. Here, the officer's focus was on the subject's companion who walked with the subject away from the officer. Additionally, here there was no eye contact between the subject or his companion and the officer as there was in *Chesternut.*

In assessing what a reasonable person would believe, we are charged to view all of the circumstances surrounding the incident. (*Michigan* v. *Chesternut, supra,* 486 U.S. at p. 573 [100 L.Ed.2d at pp. 571-572].) While there is little evidence indicating appellant was cognizant of the officer's approach, the lower court apparently found that appellant did know Officer Harrelson was walking in his direction. But the officer gave no orders, nor made any show of force which would lead a reasonable person to believe he was not free to leave. The officer did nothing more than observe appellant prior to appellant's arrest. Though Officer Harrelson did run about 50 feet,

he did not obstruct appellant's movement, communicate with appellant, draw a weapon, make a gesture, or make eye contact. In fact, the officer's focus was primarily on appellant's female companion prior to the seizure of the brown bag. Applying the *Mendenhall* and *Chesternut* mandate of objective analysis to the circumstances of this càse, we hold a reasonable person in appellant's position would have concluded from the conduct of the police that he was free to leave.

## B. *The Law Post Trial*

Recently, the United States Supreme Court held a pursuit was not a "seizure" under the Fourth Amendment. That is, a person is not "seized" within the meaning of the Fourth Amendment unless he or she is somehow physically restrained or voluntarily submits to a peace officer's authority. (*California v. Hodari D.* (1991) 499 U.S. __, __-__ [113 L.Ed.2d 690, 695, 699, 111 S.Ct. 1547, 1549, 1552].) A suspect's fleeing and police pursuit— even though a reasonable person in the suspect's position might believe he was not "free" to leave—is not a "seizure." (*Ibid.* [113 L.Ed.2d 690, 695, 699, 111 S.Ct. 1547, 1549, 1552].)

This new rule effectively moots the foregoing *Mendenhall-Chesternut* analysis, except for the reason that appellant should know his case has been judged by the law extant at the time of his arrest and trial. Accordingly, we have undertaken the review of this case according to the *Mendenhall-Chesternut* principles as well as *Hodari D.*

In *Hodari D.* two officers in an unmarked car patrolling a high crime area of Oakland came upon four or five youths huddled around a small car at the curb. When the youths saw the police car, they fled. One of the officers chased Hodari who, as he was about to be caught, threw away some rock cocaine. The officer then tackled him.

*Hodari D.* turned on ". . . whether, at the time he dropped the drugs, Hodari had been 'seized' within the meaning of the Fourth Amendment." (499 U.S. at p. __ [113 L.Ed.2d at p. 695, 111 S.Ct. at p. 1549].) The court noted no difference between an arrest and a detention, for purposes of Fourth Amendment analysis,[3] and held "An arrest requires *either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority." (*Id.* at p. 499 [113 L.Ed.2d at p. 697, 111 S.Ct. at p. 1551].) The court further stated that the *Mendenhall* rule merely ". . . states a *necessary*, but not a *sufficient*

---

[3]"We do not think it desirable, even as a policy matter, to stretch the Fourth Amendment beyond its words . . . ." (*Id.* at p. __ [113 L.Ed.2d at pp. 697-698, 111 S.Ct. at p. 1551].)

condition for seizure—or, more precisely, for seizure effected through a 'show of authority.' *Mendenhall* establishes that the test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." (*Id.* at p. __ [113 L.Ed.2d at p. 698, 111 S.Ct. at p. 1551].)

In the wake of *Hodari D.*, two cases principally relied upon by appellant no longer help his position. In *People* v. *Washington* (1987) 192 Cal.App.3d 1120 [236 Cal.Rptr. 840] and *People* v. *Menifee* (1979) 100 Cal.App.3d 235 [160 Cal.Rptr. 682], courts suppressed evidence of abandoned narcotics when suspects fled[4] approaching officers who lacked sufficient reason to suspect criminal activity. In each case, the suspect threw away the narcotics before the pursuing officer exerted physical control over him. As the Supreme Court stated in *Hodari D.*: "The word 'seizure' . . . does not remotely apply . . . to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee. *That is no seizure.*" (*Hodari D., supra,* 499 U.S. at p. __ [113 L.Ed.2d at p. 697, 111 S.Ct. at p. 1550], italics added.)[5]

Here, appellant's utter lack of any real submission to the authority of Officer Harrelson until his arrest, and the lack of the exercise by the officer of any physical control over defendant demonstrate just how far this encounter was from an arrest. "The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield . . . . [I]t does not." (*Hodari D., supra,* 499 U.S. at p. __ [113 L.Ed.2d at p. 697, 111 S.Ct. at p. 1550].) Because there clearly was no "seizure" under *Hodari D.* we need not decide whether there was a "show of authority" under *Mendenhall.*

Having no rights contravened by Officer Harrelson's perusal of the rubbish in the trash can, appellant cannot complain now of the admission of the marijuana into evidence against him.

---

[4]The trial judge and Justice Scalia, in his majority opinion in *Hodari D.*, independently sought guidance from the same source in explaining the recurrent factual phenomena presented by this case. See Proverbs 28:1 ("The wicked flee when no man pursueth"). (*Hodari D., supra,* 499 U.S. at p. __, fn. 1 [113 L.Ed.2d at p. 697, 111 S.Ct. at p. 1549].)

[5]"[N]either usage nor common-law tradition makes an *attempted* seizure a seizure." (*Hodari D., supra,* 499 U.S. at pp. __-__, fn. 2 [113 L.Ed.2d at p. 697, 111 S.Ct. at pp. 1550-1551].)

## II*

### FAILURE TO GIVE CALJIC NO. 2.02 SUA SPONTE

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   ..   .   .

### CONCLUSION

The judgment is affirmed.

Wallin, Acting P. J., and Moore, J., concurred.

---

*See footnote, *ante*, page 1302.